The STATE of Ohio, Appellee,

v.

TOMLINSON, Appellant.

[Cite as *State v. Tomlinson* (1997), 125 Ohio App.3d 13.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

Nos. 96–L–140 and 96–L–176.

Decided Dec. 15, 1997.

*John P. O'Donnell,* Lake County Special Prosecutor, for appellee.

*Albert L. Purola,* for appellant.

---

FORD, Presiding Judge.

Appellant, Jarod B. Tomlinson, appeals from judgment entries of the Lake County Court of Common Pleas convicting him of involuntary manslaughter, R.C. 2903.04, and aggravated vehicular homicide, R.C. 2903.06, and overruling his two motions for a new trial.

On September 14, 1995, appellant drove a two-door Buick LeSabre to the parking lot of Nino's Lounge in Painesville, Ohio. Appellant was in the driver's seat, Terrell Spikes was in the front passenger's seat, and Kenyata Reid occupied the passenger's side of the back seat. While the vehicle was stopped, Veronica Neimann approached the passenger's side of the automobile. She leaned into the open window and asked the occupants if they had any drugs for sale. Neimann then reached into the vehicle and held out forty dollars. Reid grabbed the money, and Neimann lunged into the vehicle to retrieve her forty dollars. The automobile then accelerated while Neimann's torso was inside the vehicle, but her legs were dangling outside the window. As the Buick began to pull away, Neimann fell to the ground and, according to some testimony, was struck by the back wheel of the automobile.

On October 12, 1995, the Lake County Grand Jury issued a four-count indictment against appellant. Count one alleged involuntary manslaughter, R.C. 2903.04(A), an aggravated felony of the first degree. Count two charged involuntary manslaughter, R.C. 2903.04(B), an aggravated felony of the third degree. The third count alleged aggravated vehicular homicide, R.C. 2903.06, an aggravated felony of the third degree. Count four charged appellant with aggravated robbery, R.C. 2911.01, an aggravated felony of the first degree.

The matter proceeded to a jury trial on June 4, 1996. Appellee's first witness was Spikes. After answering questions relating to his name, birth date, and residence, Spikes invoked his privilege against self-incrimination and explained that he intended to invoke the privilege with respect to each question relating to the events that occurred on September 14, 1995. Once again, appellee questioned

Spikes, who reasserted the privilege and expressed his desire that the questioning be terminated. The court excused Spikes, and appellee called the next witness.

When the trial resumed the next day, appellee called Spikes to the stand, and he again asserted his Fifth Amendment privilege against self-incrimination. Upon the filing of appellee's written motion, the court granted Spikes transactional immunity pursuant to R.C. 2945.44. Spikes then took the stand and again asserted his Fifth Amendment privilege despite his immunity from prosecution for the events of September 14, 1995. The court informed Spikes of his immunity from prosecution, and Spikes again declined to answer appellee's questions. The court ordered Spikes to answer, and he refused again. Consequently, the court found Spikes in contempt and revoked his immunity the following day.[1]

The trial proceeded without Spikes's testimony. At the conclusion of the state's case-in-chief, the trial court granted appellant's motion for acquittal on the first and fourth counts of the indictment. Appellant was found guilty on the second count, involuntary manslaughter, R.C. 2903.04(B), an aggravated felony of the third degree, and the third count, aggravated vehicular homicide, R.C. 2903.06, also an aggravated felony of the third degree. For sentencing purposes, the court merged count two with count three, and sentenced appellant to an indefinite term of five to ten years at the Lorain Correctional Institute in Grafton, Ohio.

Appellant filed a motion for a new trial on June 13, 1996, on the basis of newly discovered evidence that Spikes had made an admissible hearsay statement indicating that he had pushed Neimann from the vehicle. In a two-page judgment entry, the trial court overruled the motion. Appellant filed another motion for a new trial on September 6, 1996, again on the basis of newly discovered evidence of Spikes's written admission that he pushed Neimann from the automobile. In a judgment entry filed on September 26, 1996, the trial court also overruled this motion.

Appellant timely filed his notice of appeal and asserts the following assignments of error:

"[1.] [Appellant] was denied a fair trial when the trial court 'revoked' the immunity it had previously given Terrell Spikes, the state's chief witness, when he refused to testify thereby depriving [appellant of] the right to call him as a witness.

---

1. Although the court granted Spikes immunity through a written judgment entry, the revocation was made orally.

"[2.]   The trial court improperly denied [appellant's] two motions for a new trial without a hearing."

In the first assignment, appellant first argues that the trial court erred in granting Spikes transactional immunity.  Ohio courts may grant only transactional immunity, which "protects the witness from prosecution for any criminal activity about which he testified within the limits of the grant, whereas use immunity protects the witness only from having the specific compelled testimony or the information directly or indirectly derived from the compelled testimony used as evidence against him in a later prosecution." *State ex rel. Koren v. Grogan* (1994), 68 Ohio St.3d 590, 592, 629 N.E.2d 446, 449.

The purpose of R.C. 2945.44, the immunity statute, is to enable the prosecution to procure testimony necessary to prove its case.  *State ex rel. Leis v. Outcalt* (1982), 1 Ohio St.3d 147, 149, 1 OBR 181, 183–184, 438 N.E.2d 443, 446–447.

In *State v. Asher* (1996), 112 Ohio App.3d 646, 653, 679 N.E.2d 1147, 1151–1152, the court explained:

"The procedure for granting immunity is codified in R.C. 2945.44.  When a witness refuses to answer a question at trial and invokes the Fifth Amendment privilege against self-incrimination, the *court of common pleas* shall compel the testimony of a witness *if both of the following apply:* the prosecutor makes a *written* request to the *court of common pleas* to order the witness to answer notwithstanding the claim of privilege *and* the *court of common pleas* informs the witness *on the record* that by answering, the witness will receive immunity.  R.C. 2945.44(A)(1) and (2).  Before granting immunity, the common pleas court must also determine, in its discretion, whether the prosecutor's request for immunity would further the administration of justice."   (Citations omitted and emphasis *sic*.)

The decision of whether to grant immunity rests within the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion.  *State ex rel. Ney v. Niehaus* (1987), 33 Ohio St.3d 118, 119, 515 N.E.2d 914, 916.

In the present case, upon the special prosecutor's written motion, the court informed Spikes that by answering, he would receive immunity.  The court also found that granting Spikes immunity would further the administration of justice.  Thus, the mandates of R.C. 2945.44 were satisfied.

Appellant's primary argument under this assignment is that the court's revocation of Spikes's immunity denied him of the right to a fair trial, because the revocation eliminated any possibility that Spikes would decide to testify in any

manner that would assist appellant's defense. Since this is an issue of first impression in Ohio, we hold that when a witness has not made any self-incriminating statements after the grant of immunity, a trial court's revocation of immunity will not be disturbed on appeal in the absence of an abuse of discretion.

In the case at bar, the trial court did not abuse its discretion by revoking Spikes's immunity. First, upon granting Spikes immunity, the court informed him that "by answering or producing information he [would] receive immunity under [R.C. 2945.44(B).]" [2] Therefore, Spikes's immunity was conditioned upon his truthful testimony. Since he never testified, he was not entitled to immunity.

Second, Spikes made no incriminating statements either before or after the grant of immunity. Third, appellant has made no showing that Spikes's testimony would have provided any exculpatory evidence for his case. Contrarily, the fact that appellant objected to the granting of immunity indirectly indicates that Spikes's testimony would have been beneficial to the prosecution. Fourth, there is little indication that Spikes ever would have testified because he had refused to testify on three prior occasions and had been held in contempt for his third failure to testify. Fifth, had the court not revoked Spikes's immunity after his refusal to testify, Spikes might have taken the stand and testified in such a manner to inculpate himself and exculpate appellant, which would have been contrary to the legislative intent that immunity be used to enable the government to present certain important testimony. See *Leis*, 1 Ohio St.3d at 149, 1 OBR at 183–184, 438 N.E.2d at 446–447. Therefore, we conclude that the trial court did not abuse its discretion in revoking Spikes's immunity after he had invoked his Fifth Amendment privilege against self-incrimination. Appellant's first assignment of error is without merit.

In the second assignment of error, appellant asserts that the trial court erred in overruling his two motions for a new trial, without a hearing, on the basis of newly discovered evidence. Crim.R. 33(A)(6). In *State v. Shepard* (1983), 13 Ohio App.3d 117, 118, 13 OBR 135, 137, 468 N.E.2d 380, 383, the court explained the requirements of Crim.R. 33(A)(6) as follows:

"First, appellant must have used reasonable diligence in trying to find the evidence. Second, appellant must present affidavits to inform the trial court of the substance of the evidence that would be used if a new trial were to be granted. Third, the evidence presented must be of such weight that a different result would be reached at the second trial."

The ruling on a motion for a new trial rests within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion.

---

2. This language was taken directly from the court's judgment entry granting Spikes immunity.

*State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54, paragraph one of the syllabus. Further, our review of a trial court's decision not to grant a hearing on a motion for a new trial is whether the trial court abused its discretion. *Toledo v. Stuart* (1983), 11 Ohio App.3d 292, 293, 11 OBR 557, 558, 465 N.E.2d 474, 475–476.

In the present case, in his first motion for a new trial, appellant argued that evidence of Spikes's statement that he pushed Neimann from the vehicle necessitated a new trial. Appellant produced the affidavit of Adella Bobbs, his mother, who asserted that on September 15, 1995, the day following the altercation with Neimann, Spikes told both her and Mariann Spikes, Spikes's mother, that he had pushed Neimann from the automobile. In overruling the motion, the trial court found that (1) the affidavit would not have changed the outcome of the trial, (2) Spikes's statement should have been discovered before or during trial,[3] and (3) the statements made by Spikes, "even if admissible, would appear to be subject to serious concern of prejudice by the jury."[4]

In the case *sub judice,* appellant failed to meet the requirements of the first and third prongs of the *Shepard* test. The evidence offered in support of the motion was an affidavit of appellant's mother, who was readily available with regard to this information concerning Spikes's statement. Additionally, we are not persuaded that the testimony of appellant's mother was of adequate weight to demonstrate that a different result would have been reached at the end of a second trial, because neither Marianne Spikes nor Spikes corroborated the allegations made in the affidavit.

Further, as the court properly noted, even if Spikes did push Neimann from the vehicle, that would not have exculpated appellant, but instead may have merely implicated Spikes. Appellant was convicted of involuntary manslaughter, R.C. 2903.04(B), which states that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a misdemeanor of the first, second, third, or fourth degree or a minor misdemean-

---

3. On this second finding, the court stated, "It is the further finding of the Court that the evidence alleged in Defendant's motion, to-wit: an [a]ffidavit of the mother of Terrell Spikes, should have been discovered before or during trial, and produced at trial[.]" We note that this statement is incorrect, because the only affidavit accompanying the motion was that of appellant's mother, not Spikes's mother.

4. The court's conclusion in the third finding is troubling, because it appears to be a finding that the evidence of Spikes's statement would be inadmissible under Evid.R. 403(A), the trial judge being of the opinion that the probative value of the testimony indicating that Spikes pushed Neimann from the automobile would be substantially outweighed by the danger of unfair prejudice. In our opinion, the exclusion of such evidence upon Evid.R. 403(A) grounds would be an abuse of discretion. Additionally, this evidence would be admissible hearsay under Evid.R. 804(B)(3) as a statement against interest.

or." Additionally, appellant was found guilty of aggravated vehicular homicide, R.C. 2903.06, which provides, "No person, while operating or participating in the operation of a motor vehicle * * * shall recklessly cause the death of another."

In the present case, Spikes's admission could have affected the causation element of either of these offenses, but there is competent, credible evidence that appellant recklessly drove over the victim, causing her death. The testimony of the coroner showed that Neimann sustained injuries that indicated that a force was applied to her head for a moment, and that her head was possibly dragged along the pavement. Additionally, appellant testified at trial on cross-examination that shortly after the incident, he and Spikes had discussed the accident and that they both knew that they "had run [Neimann] over." Therefore, based upon the competent, credible evidence that appellant's vehicle ran over Neimann's head after she was on the ground, the trial court did not abuse its discretion in concluding that the evidence of Spikes's alleged admission to his mother would not have made a difference in the trial. Consequently, the trial court did not abuse its discretion in overruling appellant's motion for a new trial without a hearing.

In his second motion, appellant asserted that he was entitled to a new trial on the basis of the newly discovered evidence in the form of a letter purporting to have been written by Spikes, dated August 22, 1996, in which Spikes stated that he pushed Neimann from the automobile. Appellant's motion failed to satisfy the second and third parts of the *Shepard* test. First, appellant failed to accompany his motion with affidavits and merely attached a copy of the letter that Spikes had allegedly mailed appellant. Second, as noted above, any evidence with respect to Spikes pushing Neimann from the vehicle would have inculpated Spikes and would not have exculpated appellant.

Additionally, the jury was aware of the possibility that Spikes may have pushed Neimann from the vehicle, because appellant made that allegation during his direct testimony at trial. Thus, the trial court did not abuse its discretion in overruling appellant's motion for a new trial based upon Spikes's letter, or any other evidence showing that Spikes pushed Neimann from the vehicle. Appellant's second assignment of error is without merit.

For the foregoing reasons, appellant's assignments of error are without merit. The judgment of the Lake County Court of Common Pleas is affirmed.

*Judgment affirmed.*

CHRISTLEY and NADER, JJ., concur.