OPINION
Appellant, Michael A. Smith, appeals from his conviction on one count of vehicular homicide and one count of assured clear distance after a bench trial in the Portage County Municipal Court, Ravenna Division. For the reasons that follow, we affirm in part, reverse in part, and remand the matter for further proceedings consistent with this opinion.
On the morning of June 18, 1998, the victim, Caren Gilbride ("Gilbride"), was working as a flagger at the intersection of State Route 5 and Lake Street in Portage County, Ohio, when she was struck and killed by a station wagon driven by appellant. After an investigation, appellant was separately charged with vehicular homicide in violation of R.C.2903.07, and with assured clear distance in violation of R.C. 4511.21(A). Appellant entered a plea of not guilty to both charges. The trial court appointed counsel to represent appellant and consolidated the cases for purposes of trial.
A two-day bench trial was conducted on March 1, 1999 and March 2, 1999, where both sides called witnesses and presented evidence. The trial court found appellant guilty of both charges and filed a judgment entry setting out its decision on April 12, 1999.
On July 9, 1999, appellant filed with the trial court a motion for new trial based on newly discovered evidence pursuant to Crim.R. 33(A)(6). After holding a hearing, the trial court denied appellant's motion on July 16, 1999. The trial court subsequently merged the offenses and sentenced appellant to one hundred eighty days in the Portage County Jail, with eighty days of the sentence conditionally suspended. In addition, the court placed appellant on electronically monitored house arrest for a total of one hundred days to begin upon appellant's release.
Appellant retained new counsel and filed two timely notices of appeal. They were consolidated for all purposes and appellant's sentence has been stayed pending the outcome of this appeal. He now raises the following assignments of error for our review:
 "[1.] The trial court erred in arbitrarily limiting the indigent defendant-appellant to only one expert witness denying defendant-appellant due process of law and the type of expert assistance necessary to present an adequate defense.
 "[2.] The trial court erred in denying defendant-appellant's motion for new trial on the ground of newly discovered evidence.
 "[3.] The indigent defendant-appellant was denied the effective assistance of counsel by his court appointed attorney.
 "[4.] The trial court erred pursuant to Ohio Revised Code Section 2929.23(b)(1) [sic] in sentencing defendant-appellant after the conviction in the bench trial."
In his first assignment of error, appellant argues that the trial court abused its discretion by arbitrarily limiting funds for expert assistance. Appellant claims the trial court instructed his attorney at the time of his appointment that he was permitted to retain only one expert witness for trial. According to appellant, this decision prejudiced his defense because there were multiple issues in the case that required expert testimony.
Specifically, appellant believes that because the prosecution alleged he may have been under the influence of cocaine at the time of the accident, a pharmacological expert was necessary to refute those claims. However, appellant also argues that in addition to a pharmacological expert, he should have been provided with the services of an accident reconstruction expert to determine whether he was actually at fault in hitting the victim.
To support his position, appellant relies upon Ake v. Oklahoma (1985),470 U.S. 68, in which the Supreme Court of the United States held that a state is constitutionally required to provide an indigent defendant access to a psychiatrist in preparing his defense if the offender can make a preliminary showing that his sanity will be at issue at trial. While Ake involved expert psychiatric assistance, it is generally recognized that the case stands for "the proposition that due process may require that a criminal defendant be provided other types of expert assistance when necessary to present an adequate defense." State v.Mason (1998), 82 Ohio St.3d 144, 149.
Having said that, a review of the record shows that appellant's trial attorney, Jerry Goodwin ("Goodwin"), never asked for an accident reconstruction expert to be appointed. Appellant explains this omission by arguing that the trial court informed Goodwin that appellant was only going to be allowed one expert witness at state's expense. He further argues that because his attorney felt that a pharmacological expert would be more important than an accident reconstructionist, Goodwin chose to retain the services of Dr. John. W. Boja, Ph.D., to challenge the prosecution's claim that appellant was chemically impaired on the day of the accident.
In an affidavit included with appellant's motion for new trial, Goodwin claimed that he was instructed by the trial court that he was permitted to hire only one expert witness on appellant's behalf. Goodwin further alleged that this instruction effectively restricted him from retaining another expert to testify. However, in a subsequent affidavit filed with the trial court, Goodwin clarified his earlier statement and stated that at the time he was appointed to represent appellant, the trial court actually "promised the services of one expert witness without the necissity [sic] of proving to the Court whether or not said expert witness would make a difference in the outcome of the case[,]" and that he, Goodwin, never formally or informally requested another expert.Hence, it is clear from Goodwin's last affidavit that the trial court did not, in fact, limit appellant to one expert witness. Rather, if appellant desired another expert's services, he would have been required to prove that such testimony would have been necessary pursuant to Ake, supra, before the court would approve the funds. As a result, appellant's first assignment of error has no merit.
In assignment of error two, appellant maintains that the trial court erred in denying his motion for new trial based on the discovery of new evidence. He argues that the affidavit submitted by Lyn Jackman ("Jackman"), an accident reconstruction expert, entitled him to a new trial because it showed that the collision was unavoidable.
Crim.R. 33 states in pertinent part:
 "(A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
"* * *
 "(6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. * * *"
In order for appellant to be entitled to a new trial under Crim.R. 33(A)(6), he had to meet the following requirements: (1) use reasonable diligence in trying to find the evidence; (2) present affidavits to inform the trial court of the substance of the evidence that would be used if a new trial were to be granted; and (3) the evidence presented must be of such weight that a different result would be reached at the second trial. State v. Tomlinson (1997), 125 Ohio App.3d 13, 19, quoting State v. Shepard (1983), 13 Ohio App.3d 117, 118. The ruling on a motion for new trial rests within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. Tomlinson
at 19-20, citing State v. Schiebel (1990), 55 Ohio St.3d 71, paragraph one of the syllabus. An abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. State v. Montgomery
(1991), 61 Ohio St.3d 410, 413; State v. Adams (1980), 61 Ohio St.2d 151,157.
In his motion, appellant argued that Jackman's affidavit constituted new evidence entitling him to a new trial. In this affidavit, Jackman averred that, based upon a reasonable degree of scientific certainty, appellant could not have avoided hitting Gilbride, and that based on the negligent manner in which she performed her job, Gilbride was "a" proximate result of the accident. Jackman relied upon a copy of the crash report, photographs taken at the accident scene, and testimony given at appellant's trial in reaching her conclusion.
Based on this evidence, Jackman concluded that appellant was driving approximately forty-one to forty-six m.p.h., and that he "began perceiving and reacting to the presence of [Gilbride] some 51 ft. to 92 ft. prior to impact." Moreover, Jackman spent considerable effort in pointing out that the area was no longer properly marked as a construction zone. As a result, Jackman believed that appellant "could not have, based upon normal human reaction time of approximately 1 to 1 1/2 seconds, avoided impact with [Gilbride]."
After looking at the affidavit in question, we first conclude that in reference to the "perception" issue, it does not constitute new evidence as contemplated by Crim.R. 33(A)(6). In fact, Jackman's report is actually irrelevant to appellant's conviction for vehicular homicide. Although, appellant now argues that it was Gilbride's actions and not his own, which were the proximate cause of the accident, that is not what Jackman stated in her report. Rather, Jackman concluded that Gilbride "was a proximate cause of [the] accident." (Emphasis added.)
This distinction is important because it is well-settled in Ohio that any contributory negligence of the decedent is not a defense to a criminal charge of vehicular homicide, unless it is the sole proximate cause of the accident. State v. Grant (July 16, 1993), Lake App. No. 92-L-037, unreported, at 5-6, 1993 Ohio App. LEXIS 3579 (wherein this court held that the trial court did not abuse its discretion when the trial court, after determining that the decedent's negligence was not the sole proximate cause of her death, did not allow the defendant to introduce evidence that the decedent had been drinking prior to the accident). As a result, unless appellant could have proved that Gilbride was the sole proximate cause of the collision, evidence concerning some negligence on Gilbride's part would have been irrelevant and, therefore, inadmissible at trial.[1]
Even assuming that Jackman's use of the article "a" in "a proximate cause" was a semantical error, Jackman's affidavit specifically did not refute the critical parts of the compelling eyewitness testimony of Ralph Gregory ("Gregory"). Gregory testified that on the day of the accident, he was driving on Lake Street on his way to deliver a load of diesel fuel when he was stopped by Gilbride at the intersection with State Route 5. Shortly after stopping his truck, Gregory testified that Gilbride backed into the intersection, looked both ways, and motioned for him to proceed through.
Before pulling onto State Route 5, however, Gregory also looked both ways. He noticed a car traveling south on State Route 5 near the far (north) end of the bridge.[2] Accordingly, he decided to wait until the car stopped at the intersection before advancing. Gregory motioned to Gilbride that he was going to wait and pointed in the direction of the oncoming car. Unfortunately, before Gilbride realized what Gregory was trying to tell her, she was struck and killed by appellant's station wagon.
According to Gregory, June 18, 1998 was a clear day allowing motorists to see in both directions for quite some distance. In fact, as we have already noted, Gregory testified that looking from the intersection toward the direction from which appellant was traveling, one could see at least to the far end of the bridge on State Route 5. During the subsequent investigation, this distance was measured by the Ohio State Highway Patrol to be six hundred nineteen feet.[3]
Despite this uncontroverted testimony, Jackman never addressed the fact that appellant apparently had six hundred nineteen feet of clear and unobstructed vision from the intersection to the far side of the bridge. Furthermore, there was no explanation as to how she determined that appellant only "began perceiving and reacting to the presence of [Gilbride] some 51 ft. to 92 ft. prior to impact[,]" while Gregory could see appellant's station wagon some six hundred nineteen feet away. Finally, and most importantly, Jackman never opined that appellant wasunable to see Gilbride at a distance of six hundred nineteen feet, only that he did not see her until "51 ft. to 92 ft. prior to impact." This is important because the question before the trial court was not when
appellant first saw Gilbride, but rather, when should appellant have seen her.
In reference to the issue of whether this was a properly marked construction site, appellant emphasizes the fact that the construction signs were covered and the orange barrels that normally marked a construction zone were off to the side of the road. However, the prosecution did not seriously dispute this fact at trial. Moreover, assuming that the intersection was not properly marked as a construction area, excessive speed was never an issue because no one disputed that appellant's speed was very likely less than the posted speed limit.
We understand and agree with the argument that this was an area which was no longer actively marked as a construction site, although apparently there were still approximately sixty orange barrels along the berm of the road. Nevertheless, there is no question that the accident occurred in the center of an intersection where there was a permanent, blinking yellow caution light operating in the direction in which appellant was traveling. And, most importantly, it was uncontradicted that appellant had at least six hundred nineteen feet of unobstructed vision in which to see appellant.
To convict appellant of vehicular homicide, the state was only required to prove that he negligently caused the death of another while operating a motor vehicle. R.C. 2903.07(A).[4] The state was not required to prove that the accident occurred in a marked construction area. Hence, that fact was not determinative as to whether appellant was negligent in the operation of his vehicle.
In other words, if it is conceded that the intersection was not a properly marked construction area, that Gilbride may not have been positioned in the roadway according to administrative regulations, and that she may not have been holding her flag correctly, Gilbride was still a stationary, discernable object standing in the middle of a roadway who was visible for some six hundred nineteen feet to oncoming traffic. Accordingly, the question is whether appellant breached a general duty of care to Gilbride in terms of apparently being so inattentive to the road before him, such that he did not see her in time to avoid her.
Thus, we conclude that Jackman's proposed opinion was neither adequate nor relevant to demonstrate that a different result would have been reached in a second trial. In summary, the trial court did not abuse its discretion in denying appellant's motion for new trial for the following reasons: (1) the facts relied upon were available to or known by appellant prior to trial; (2) the "new" evidence, i.e., Jackman's opinion, only spoke of possible contributory negligence; and (3) Jackman's report failed to address the direct and corroborated evidence presented by the prosecution as to appellant's available line of sight. Therefore, appellant's second assignment of error is without merit.
In assignment of error three, appellant argues that his trial attorney, Goodwin, was ineffective in his representation. Appellant maintains that Goodwin should have requested that the trial court appoint an accident reconstruction expert to assist in his defense. In addition, he also claims that Goodwin should have objected to the prosecution's use of an Ohio State Highway Patrolman as an accident reconstruction expert, or in the alternative, to the admission of all evidence relating to the reconstruction of the accident. We disagree.
To be successful on a claim of ineffective assistance of counsel, a defendant must meet the two-pronged test originally articulated by the United States Supreme Court in Strickland v. Washington (1984),466 U.S. 668, and adopted by the Supreme Court of Ohio in State v.Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. See, also, State v. Sherman (June 25, 1999), Portage App. No. 98-P-0009, unreported, at 7-8, 1999 Ohio App. LEXIS 2940; State v. Nicholas (Dec. 23, 1999), Portage App. No. 98-P-0061, unreported, at 6, 1999 Ohio App. LEXIS 6265.
First, a defendant must be able to show that his trial counsel was deficient. Bradley at 141. This requires a showing that trial counsel made errors so serious that, in effect, the attorney was not functioning as the "counsel" guaranteed by both the United States and Ohio Constitutions. Id.
Second, a defendant must show that the deficient performance prejudiced his defense. Id. at 142. This requires a showing that there is "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at paragraph three of the syllabus. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 142. A reviewing court must always remember that "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland at 686.
There is a strong presumption in Ohio that a licensed attorney is competent. State v. Smith (1985), 17 Ohio St.3d 98, 100; Sherman at 8-9. Accordingly, to overcome this presumption, a defendant must show that the actions of his attorney did not fall within a range of reasonable assistance. State v. Rudge (Dec. 20, 1996), Portage App. No. 95-P-0055, unreported, at 35, 1996 Ohio App. LEXIS 5807.
Moreover, the decision of whether or not to call a particular witness is generally left to the sound discretion of the trial counsel, and falls within the ambit of trial strategy and tactics. Nicholas at 10. Accordingly, courts have traditionally been reluctant to find ineffective assistance of counsel in those cases where an attorney fails to call a particular witness. Id. See, also, State v. Otte (1996),74 Ohio St.3d 555, 565-566; State v. Williams (1996), 74 Ohio St.3d 456.
After reviewing the record before us, we conclude that Goodwin was not ineffective and did not prejudice his client by failing to present an accident reconstruction expert. The focus of the defense at trial was to show that appellant was not driving under the influence of cocaine. In contrast, it was the prosecution's original position that the drug adversely affected appellant's driving.[5] The prosecution believed appellant's alleged use of cocaine explained why there was no reaction on appellant's part when he had a clear and unobstructed view of Gilbride for a significant distance prior to striking her.
In response, Goodwin very effectively presented the testimony of a pharmacological expert to refute the testimony of the state's expert that traces of cocaine were found in the urine sample submitted by appellant shortly after the accident. Moreover, Goodwin was able to further discredit the state's expert through an aggressive cross-examination as to the reliability of the results. It is apparent that Goodwin was quite effective in this strategy because the trial court ultimately determined that there was no merit to the allegation that appellant was under the influence of drugs or alcohol at the time of the accident.
Frankly, Goodwin had little reason to question the accident reconstruction theory of the prosecution. First and foremost, it was entirely consistent with the unbiased and highly credible account given by Gregory, who was a front row eyewitness to the entire incident. Gregory testified that Gilbride was in the intersection long enough for her to look both ways, to take several steps backwards, and to then signal Gregory to proceed into the intersection. He also stated that he could see clearly as far as the far side of the bridge, a distance of six hundred nineteen feet. Moreover, Gregory also testified that he saw appellant's vehicle approaching, and that appellant appeared to take no evasive action prior to the fatal collision. Thus, the state's expert was cumulative to Gregory's testimony. As a result, it was helpful but not vital to the prosecution's case. In fact, the measurement of six hundred nineteen feet did not require an expert's opinion for it to be admissible.
Appellant, however, testified that: (1) he never saw Gilbride until just before the collision; (2) that she stepped out in front of him, and he had no opportunity to stop; but, (3) he did apply his brakes prior to hitting her. Thus, based on only their testimony, there were major credibility issues between Gregory and appellant. However, the direct physical evidence supported Gregory's testimony and refuted appellant's, with or without experts.
This distinction in factual accounts is not actually at issue in this appeal. Instead, only Jackman's affidavit is under scrutiny. Nevertheless, Jackman's opinion seems to be based only on appellant's version of the critical events.
As we noted earlier, Jackman did not refute Gregory's claim that he had a clear line of sight from the far end of the bridge to the point where Gilbride was standing in the intersection. Jackman also did not challenge the measurements taken by the Ohio State Highway Patrol, which showed that distance to be six hundred nineteen feet. Furthermore, Jackman did not dispute that the skid marks made by appellant's vehicle began after the point of impact, not before.
Thus, appellant suggests no evidence that should have alerted Goodwin that the prosecution's accident reconstruction reports were vulnerable. There simply was no physical evidence which was inconsistent with the state's theory. As a result, appellant has failed to show that Goodwin's actions fell below the level of reasonable representation or that he was prejudiced by Goodwin's conduct. Moreover, as previously mentioned, Jackman's testimony would not have changed the outcome of appellant's trial because it did not address, among other things, the critical issue of appellant's potential line of sight.
With respect to appellant's second argument, i.e., Goodwin should have objected to the prosecution's use of a member of the Ohio State Highway Patrol as an accident reconstruction expert and to the introduction of such evidence in general, we conclude that it is similarly without merit. "The qualification of an expert is a matter for determination by the court on the facts, and rulings with respect to such matters will ordinarily not be reversed unless there is a clear showing that the court abused its discretion." State v. Maupin (1975), 42 Ohio St.2d 473, 479.
Although appellant has failed to specify in his appellate brief which officer's testimony he finds objectionable, a review of the available record shows that Trooper Paul Gerke ("Trooper Gerke"), who investigated the crash scene, was sufficiently qualified to testify as to the cause of the accident. Trooper Gerke had been employed with the Ohio State Highway Patrol for seven years and had been trained to investigate crash scenes. In addition to his training, Trooper Gerke testified that he had worked approximately seven to eight hundred crash scenes in his career.
While Goodwin could challenge Trooper Gerke's conclusions, there was little to object to with respect to the various measurements that were made and photographs that were taken, such as the absence of pre-accident skid marks or the unobstructed six hundred nineteen foot line of sight. Those items, by themselves, were damning to appellant's case. As noted earlier, this testimony was essentially cumulative to Gregory's in that it merely corroborated his claim of significant unobstructed vision. Finally, we would agree that the trial court may have been in error when it stated that appellant was travelling at a speed greater then permitted in a construction area. However, such error was harmless as the trial court was on target when it noted "that [appellant] acted negligently, with a substantial lapse from due care, when operating his vehicle * * *[,] and that he "failed to perceive or avoid a risk that his conduct may cause a certain result." This conclusion was independent of the prior one. Accordingly, appellant's third assignment of error is without merit.
In his fourth and final assignment of error, appellant argues that the trial court abused its discretion in sentencing him to one hundred days of electronically monitored house arrest in conjunction with the one hundred day jail sentence. He maintains that the combined two hundred days exceeds the maximum one hundred eighty days of incarceration for a first-degree misdemeanor and violates R.C. 2929.23. The prosecution concedes the same and we agree.
R.C. 2929.23, which governs electronically monitored house arrest, provides in pertinent part:
 "(B)(1) * * * Any court may impose a period of electronically monitored house arrest upon an eligible offender who is convicted of or pleads guilty to a misdemeanor in addition to or in lieu of any other sentence imposed or authorized for the offense, except that the total of any period of electronically monitored house arrest imposed upon that eligible offender plus the period of any sentence of imprisonment imposed upon the same eligible offender shall not exceed the maximum term of imprisonment that could be imposed upon the eligible offender pursuant to 2929.21 of the Revised Code[.] * * *"
 The maximum sentence for a first-degree misdemeanor is one hundred eighty days of incarceration, which is what the trial court sentenced appellant to serve. R.C. 2929.21(B)(1). However, the court suspended eighty days of the sentence in lieu of appellant abiding by specified conditions. The trial court then proceeded to sentence appellant to one hundred days of electronically monitored house arrest to begin once appellant was released from the Portage County Jail. Thus, it is clear that the trial court exceeded the permissible sentence for a first-degree misdemeanor by twenty days in violation of R.C. 2929.23. As a result, appellant's fourth assignment of error has merit.
Based on the foregoing analysis, appellant's first, second, and third assignments of error lack merit. His fourth assignment of error is meritorious. Accordingly, the judgment of the trial court is affirmed in part, reversed in part, and the matter is remanded for further proceedings consistent with this opinion.
 ____________________________________ JUDITH A. CHRISTLEY, PRESIDING JUDGE
NADER, J., concurs, O'NEILL, J., dissents.
[1] It must be remembered that this is not a civil action where appellant could argue comparative or contributory negligence in an effort to reduce a subsequent award of damages. Schellhouse v. Norfolk and W.Ry. Co. (June 15, 1990), Erie App. No. E-89-8, unreported, at 2, 1990 WL 313422.
[2] Gregory testified on direct to the following:
 "Q[.] [the prosecutor] From that intersection at your vantage point, how far were you able to see?
 "A[.] [Gregory] I could see over the bridge, at least.
"* * *
 "Q[.] * * * Where was the car when you first noticed it?
"A[.] Probably down by the bridge.
 "Q[.] When you say, `Down by the bridge,' which bridge are you referring to?
 "A[.] Well, if you're sitting in the intersection and you look off to the left, there's a bridge or guardrail farther down, towards New Milford Road.
"* * *
 "Q[.] Did you have a clear view of State Route 5 to the north from there?
"A[.] Yes."
[3] Testimony at trial revealed that the distance from the intersection in question to the far end of the bridge was six hundred nineteen feet. In addition, measurements taken from the same intersection to the near end (south) of the bridge revealed the distance to be four hundred thirty feet.
[4] Appellant does not address how Jackman's affidavit would affect his conviction for assured clear distance. However, after reviewing the elements of the offense and the record before us, we conclude that the affidavit would not have changed the result. See, e.g., Lewis v. AceDoran Hauling Rigging Co. (June 9, 2000), Portage App. Nos. 99-P-0007 and 99-P-0020, unreported, at 5-6, 2000 Ohio App. LEXIS 2489 (holding that a person violates the assured clear distance ahead statute if there is evidence that the driver collided with an object which: (1) was ahead of him in his path of travel; (2) was stationary or moving in the same direction as the driver; (3) did not suddenly appear in the driver's path; and (4) was reasonably discernable).
[5] Although this was not charged as aggravated vehicular homicide, the fact that appellant may have been operating his vehicle under the influence of cocaine was clearly central to the prosecution's strategy at trial.