JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Jerry Brown, appeals the trial court order denying his motion for new trial. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} The events leading to this appeal are, in pertinent part, as follows. Just before 2:00 a.m., on November 18, 1994, defendant was seen shooting a nine millimeter handgun directly outside the front of a bar known as Club 91. Club 91 was closing and patrons were leaving. When the shooting ended, Major Sharp, a patron, was dead; Eddie Parker, a patron, had been shot in the leg; and two security guards, Jerome Sanders and Anthony Bolar, were wounded.
 {¶ 3} Defendant was indicted for one count of aggravated murder, and five counts of attempted murder. At defendant's jury trial, Tamone Calloway, the bar's disc jockey, testified that he and defendant had walked out of the bar together just before the shootings occurred. Once outside, Calloway stated that he saw a black male in his early twenties "with a black automatic in his waist." The man came up to him and defendant. Calloway started walking away with both defendant and the unidentified male behind him. At trial, Calloway described the sequence of events as follows.
 {¶ 4} Q: * * * What happened after that?
 {¶ 5} A: After that, I know Jerry steps out from behind me, points the gun up to my brother's head.
 {¶ 6} * * *
 {¶ 7} Q: What did Jerry Brown do?
 {¶ 8} A: Took the gun down, backed up two steps, and commenced to fire.
 {¶ 10} * * *
 {¶ 11} Q: And where was the gun at this point as he's taking two steps back?
 {¶ 12} A: Down by his side.
 {¶ 13} * * *
 {¶ 14} Q: Okay. What does Jerry do with the gun?
 {¶ 15} A: Backs up, and he starts shooting.
 {¶ 16} * * *
 {¶ 17} Q: What did the gun look like?
 {¶ 18} A: Black automatic nine millimeter.
 {¶ 19} * * *
 {¶ 20} Q: So he was firing toward the entrance of Club 91?
 {¶ 21} A: Okay, yeah.
(Tr. 700-711).
 {¶ 22} Several other witnesses confirmed that defendant had a gun and was firing it outside the bar. Twenty-one shell casings from three different guns were recovered by the police. The bullet that killed Major Sharp was identified as a nine millimeter bullet.
 {¶ 23} Defendant was convicted of one count of involuntary manslaughter with a gun specification and one count of felonious assault. Defendant was sentenced to 8 to 15 years for involuntary manslaughter, 3 years for a gun specification to run consecutively, and 6 to 15 years for felonious assault to run consecutively.
 {¶ 24} Defendant appealed his convictions to this court, which affirmed the lower court in State v. Brown (June 27, 1996), Cuyahoga App. No. 69149. In September 1996, defendant filed a petition for postconviction relief, which was denied by the trial court in February 1997. On or about March 19, 2001, defendant filed a motion for new trial,[1] in which he claimed that the prosecution withheld exculpatory evidence from him during trial. To his motion, defendant attached an unauthenticated document entitled Cleveland Police Department Offense/Incident Report, taken by Officer Wagner on 11/17/94. The report purports to contain information taken by an Officer Wagner on the date of the shootings at Club 91. The face of the report, in pertinent part, contains the following information.
 {¶ 25} EVIDENCE FOUND: WEAPON
 {¶ 26} DISPOSITION: 4TH DISTRICT
 {¶ 27} EVIDENCE MARKED BY: PTL. WAGNER 1802
 {¶ 28} SUSPECT WEAPON 001: HANDGUN CAL/32
 {¶ 29} BLUE STEEL
 {¶ 30} AUTOMATIC
 {¶ 31} BLK IN COLOR NOTHING FURTHER
The document indicates that the officer obtained the above information from an interview with Bolar who allegedly described an "unknown black male pointing a weapon (above gun) at unknown males head." In his motion, defendant argued,
 {¶ 32} this report clearly reveals that one of the victims that night, (Anthony Bolar), made a statement that implicated a then unknown male, (which he later identified to be the defendant, See T.P. 604-627), as having a .32 automatic handgun on this night, and shooting him with this weapon in his left knee.
 {¶ 33} At trial the police officer who made this report (Officer Wagner) testified under oath that he did not find any guns or weapons during his investigation that night, however, this report clearly demonstrates that he in fact did find a .32 caliber handgun this night * * *.
 {¶ 34} This evidence, if believed by a jury, would have clearly exonerated defendant Brown of the murder he now stands convicted of due to the fact that it well documented in evidence that the victim of the murder that night was killed with a .9 millimeter caliber bullet and not that of a .32 caliber.
{¶ 35} According to defendant, at trial, Officer Wagner never disclosed that he interviewed Bolar or that he found any weapons during his investigation. Without hearing, the trial court denied defendant's motion for new trial and this appeal ensued. Defendant presents one assignment of error for review.
 {¶ 36} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION FOR A NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE WHICH WAS MATERIAL TO THE DEFENSE AND WHICH WAS NOT DISCOVERED BASED ON MISCONDUCT OF THE PROSECUTING ATTORNEY AND OR THE WITNESSES FOR THE STATE.
{¶ 37} A motion for a new trial is within the sound discretion of the trial court, and the court's ruling on the motion will not be disturbed on appeal absent an abuse of that discretion. State v.Matthews (1998), 81 Ohio St.3d 375, 691 N.E.2d 1041 citing State v.Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54, paragraph one of the syllabus. Where there is competent credible evidence to support the trial court's decision, an appellate court should not substitute its judgment for that of the trial court. State v. Adams (Sept. 21, 2000), Cuyahoga App. No. 77127. The same standard applies to a trial court's decision not to grant a hearing on a motion for new trial. Adams, supra, citing Statev. Tomlinson (1997), 125 Ohio App.3d 13, 707 N.E.2d 955.
 {¶ 38} Crim.R. 33(A)(6) provides that:
 {¶ 39} A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
 {¶ 40} * * *
 {¶ 41} (6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at trial. * * *
{¶ 42} Crim.R. 33(B) sets forth the timing requirements for the filing of a motion for new trial.
 {¶ 43} Motion for New Trial; Form, Time.
 {¶ 44} * * *
 {¶ 45} Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one-hundred-twenty-day period. (Emphasis added).
 {¶ 46} A defendant who fails to meet the specific time frame set forth in the rule must show, by clear and convincing evidence, that he was unavoidably prevented from discovering the evidence upon which the motion for new trial is based.
 {¶ 47} In State v. Schiebel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54, the court held that clear and convincing evidence is that measure of proof that is more than a preponderance of the evidence, but less than proof beyond a reasonable doubt. Clear and convincing evidence produces in the mind of the fact finder a firm belief or conviction as to the facts sought to be established. Mere allegations are not sufficient. State v.Mack (Oct. 28, 1999), Cuyahoga App. No. 75086, citing to State v. Kiraly
(1977), 56 Ohio App.2d 37, 381 N.E.2d 649.
 {¶ 48} In the case at bar, defendant was convicted on May 12, 1995. Under Crim.R. 33, he had until September 12, 1995 within which to file a motion for new trial. Because defendant did not file his motion for new trial until March 2001, almost a full six years after his conviction, he must now present clear and convincing proof that he was unavoidably prevented from discovering the report he claims would have been material to his defense at trial.
 {¶ 49} In his motion for new trial, defendant attached the affidavit of his sister, Rochelle, dated March 5, 2001. In that affidavit, Rochelle averred that she had "recently obtained the Cleveland Police Department Offense/Incident Report * * * taken by Officer Wagner on 11/17/94. * * * After receiving these materials, I sent them to my brother in December 2000." Defendant attached his own affidavit in which he states, "I was not aware that these materials existed until my sister sent them to me in December of 2000 * * *." Alone or taken together, neither affidavit sufficiently meets the standard of proof required under Crim.R. 33.
 {¶ 50} Rochelle's affidavit states that the report was sent to defendant in December 2000, which obviously means she had possession of it before sending it to her brother. The affidavit offers nothing more specific about when Rochelle obtained the report other than "recently." The affidavit also fails to specify how the report was obtained, thus leaving the question of its availability to defendant before or during trial completely open to speculation. The affidavit does not rise to the level of clear and convincing proof that defendant was unavoidably prevented from discovering the report before he filed the motion for new trial.
 {¶ 51} Further, the fact that defendant was not "aware" of the materials before September 12, 1995 does not satisfy his burden of showing that he was unavoidably prevented from discovering the report before that date either. The record is clear that the state complied with defendant's discovery requests pursuant to Crim.R. 16. Simply because defendant says he only became aware of the report in December 2000 does not mean it was not available to him sooner. We underscore the fact that the affidavit of defendant's sister fails to state how she obtained the report, leaving the question of the report's availability to defendant before or during trial open to unacceptable speculation. Without more, we will not assume that defendant was prevented from discovering the report or that the state did not make it available to him.
 {¶ 52} In addition, we find the record in this case to be in direct contradiction to defendant's claim that he was unavoidably prevented from discovering the report sooner. Contrary to defendant's claim that Officer Wagner did not divulge that he had spoken to Anthony Bolar about the shootings, Officer Wagner, quite pointedly, testified that he had, in fact, taken statements from most of the eyewitnesses, including Anthony Bolar. Officer Wagner stated:
 {¶ 53} Q: Do you recall who you interviewed?
 {¶ 54} * * *
 {¶ 55} A: Interviewed them. Bolar. Anthony Bolar.
Tr. 1073.
 {¶ 56} Officer Wagner also stated that he had gathered all of the information taken by him at the bar and put that information into "reports." Tr. 1076. Then, on cross examination, the officer again said that he had "got statements" from Bolar and others. Tr. 1078-79. He added that these reports, along with all the others related to the incident, were available to anyone by simply calling the department. Officer Wagner stated that "[a]nybody that wanted to obtain a report could have obtained that report" by calling 623-5400. Tr. 1083-84.
 {¶ 57} Anthony Bolar took the stand at trial and told everyone in the courtroom, including defendant, that he had made a statement to the police "a few days later" from the hospital where he was recovering from his gunshot wound. Tr. 630-631.
 {¶ 58} The testimony of Officer Wagner and Bolar, taken together, proves that defendant was on notice Bolar had talked to the police who had taken statements, which were included in reports. Thus during the trial over five years ago, defendant was aware of the report he claims to have discovered only recently. We reject defendant's attempt to equate his recently coming into possession of the report with being unavoidably prevented from obtaining it any sooner than March 2001.
 {¶ 59} Alternatively, even if this court were to assume that defendant was unavoidably prevented from discovering the report before March 2001, he, nonetheless, fails to satisfy the required elements of proof described by the Supreme Court of Ohio in State v. Petro (1947),148 Ohio St. 505, 76 N.E.2d 370. In Petro, the Ohio Supreme Court set forth the factors a trial court must consider:
 {¶ 60} To warrant the granting of a motion for a new trial in a criminal case based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong possibility that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.
Petro, supra at syllabus.
{¶ 61} In the case at bar, we initially note that the report is unauthenticated and it is, therefore, inadmissible as part of defendant's proof that the report is what he purports it to be. Evid.R. 901. Nonetheless, even if the report were properly authenticated, defendant still fails to meet any of the criteria described in Petro, supra.
 {¶ 62} During trial, Tamone Calloway testified that he walked out of the bar with defendant and that as they walked, a man with a black automatic in his waist approached them. Calloway stated that when he looked back towards defendant and the other man, he saw defendant shoot a nine millimeter gun toward the front of the bar. There is no dispute that Major Sharp died from a nine millimeter gunshot wound.
 {¶ 63} At trial, Bolar stated that he did not see anyone else with a firearm. Defendant argues that if Bolar saw him fire a .32 caliber weapon as indicated in the report, then he could not have shot and killed Sharp. Defendant's argument is flawed because Bolar was subject to cross examination and was never asked what type of weapon he saw in defendant's possession. Moreover, even if Bolar would have testified that defendant had a .32 caliber handgun instead of a .9 mm gun, that testimony would have been in direct conflict with the testimony given by Calloway, who stated defendant had a .9 mm weapon. The jury was free to determine the veracity of the testimony as between the two men. State v. Wilson
(1996), 74 Ohio St.3d 381, 390, 659 N.E.2d 292. We cannot conclude the jury would have rendered a different verdict simply because testimony between the two witnesses conflicts. Defendant does not satisfy the first prong of Petro, supra.
 {¶ 64} Defendant also fails to satisfy the second and third elements of Petro, supra, because he has not shown that the report could not have been discovered before or during his trial. Defendant attached his own and his sister's, Rochelle's, affidavit to his motion for new trial. Both affidavits state that the report was obtained recently. We reject Rochelle's affidavit as an attempt to satisfy the third element ofPetro, supra, because the word "recently" does not provide this court with enough detail to determine that the report could have been discovered only after the trial. As noted earlier, both Officer Wagner and Bolar testified at trial that Bolar had given a statement to police just after the shootings. And even though defendant's affidavit states he received the report in December 2000, he too has failed to prove that it could have been discovered only after the trial. Accordingly, neither of the affidavits satisfies the second or third prong of Petro, supra.
 {¶ 65} The report is also insufficient under Petro's additional requirements that it be material, not merely cumulative, and does not merely impeach or contradict former evidence. Defendant claims the state had the report at the time of his trial and that he had requested anything of an exculpatory nature before the trial began. Defendant argues that had the state produced the report it would have been exculpatory and, therefore, material to his defense.
 {¶ 66} Even though defendant requested all information from the state relevant to his case, we do not conclude that the report was the type of information to which defendant was entitled. In Brady v.Maryland, 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194 (1963), the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Such evidence is material "if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different."United States v. Bagley, 473 U.S. 667, 87 L.Ed.2d 481, 105 S.Ct. 3375, (1985); State v. Fortson, (Aug. 2, 2001), Cuyahoga App. No. 8240; Statev. Dempsey (June 15, 2000), Cuyahoga App. No. 76386. A reasonable probability is that which is sufficient to affect or undermine confidence in the outcome of a trial. Bagley, supra.
 {¶ 67} Thus, there are three essential components of a Brady violation: (1) evidence at issue must be favorable to the accused because it is exculpatory or impeaching; (2) evidence must have been willfully or inadvertently suppressed by the State; and (3) prejudice ensued.
Strickler v. Greene, 527 U.S. 263, 281-282, 144 L.Ed.2d 286,119 S.Ct. 1936 (1999).
 {¶ 68} The United States Supreme Court has held that the prosecution's "omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." United States v. Agurs, 427 U.S. 97, 112-13, 49 L.Ed.2d 342,96 S.Ct. 2392 (1975).
 {¶ 69} In the case at bar, the record shows defendant filed several motions for information obtained by police and the prosecuting attorney. In December 1994, defendant filed a motion for discovery in which he requested the prosecutor to produce a variety of information, including "[a]ll evidence known, or which may become known to the State, favorable to the defendant and material to either guilt or punishment." The state responded to the request stating that, pursuant to Crim.R. 16, it would disclose all information relevant to defendant's case along with noting that it either did not have access to or was not in possession of any exculpatory material. In February 1995, defendant also filed a motion to compel "all law enforcement officials involved in the investigation of the case herein to turn over and advise the prosecuting attorney of all information obtained during the course of the investigation." The trial court denied the motion to compel, which denial defendant claims was prejudicial to him. We disagree.
 {¶ 70} First, as explained above, the report is an unauthenticated document therefore lacking the requisite indicia of trustworthiness required by the rules of evidence. Second, defendant presupposes the report was exculpatory. We do not find this supposition to be sufficiently established by defendant. The report would have served merely to either impeach or contradict Calloway's testimony.
 {¶ 71} We do not find that it would have been exculpatory or material in light of Calloway's eyewitness testimony. Calloway was the only eyewitness who was in close proximity to defendant before the shooting began. Calloway testified that he was four feet from defendant when defendant pulled out his gun and started shooting. Tr. 966. Calloway remains the best witness in that he saw the type of weapon defendant was holding at the time and he testified that it was a nine millimeter gun.
 {¶ 72} Under Petro, supra, the report must be shown to do more than merely impeach or contradict former evidence adduced at trial. Accordingly, we cannot conclude to a reasonable probability that the report would have been material to the outcome of the trial since we have no way of knowing whether Bolar would have confirmed the contents of the report. Bolar did testify at trial and even on cross-examination. When asked about what he observed about defendant the night of the shootings, he did not offer anything about the specific type of weapon defendant had in his possession.
 {¶ 73} The record also reveals that the spent shell casings found at the scene indicated that there were three different guns fired that night. The jury had this evidence to consider in deciding whether, beyond a reasonable doubt, defendant fired the nine millimeter gun that killed Major Sharp. Because the jury had the opportunity to assess the demeanor and testimony of both Calloway and Bolar, we must conclude that the jury believed Calloway's description of the events.
 {¶ 74} Even if Bolar would have confirmed the contents of the report, the credibility of his testimony would have ultimately come down to the jury's evaluation of him as a witness. The credibility of witnesses, however, is not within the ambit of this court's review under this assignment of error. Even if it were, we cannot conclude that the jury would have found Bolar or the contents of the report more convincing than the testimony given by Calloway. Wilson, supra.
 {¶ 75} Given the foregoing discussion, this Court cannot say there is a reasonable probability that the result of defendant's trial would have been different had the prosecution produced the report before or during trial. Therefore, defendant cannot establish a Brady violation or that the trial court abused its discretion in denying his motion for new trial. Defendant's sole assignment of error is overruled and the judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J., AND JAMES J. SWEENEY, J., CONCUR.
[1] The actual caption of this motion is "MOTION FOR ORDER FINDING THAT DEFENDANT WAS UNAVOIDABLY PREVENTED FROM DISCOVERY OF NEW EVIDENCE PURSUANT TO CRIMINAL RULE 33(B) AND THE MANDATES SET FORTH IN STATE V. WALDEN 483 N.E.2d 859 FROM DEFENDANT JERRY BROWN."