JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Abu Wilbon aka Willie Wilbon ("appellant") appeals from the judgment of the trial court which, following a jury trial, found him guilty of aggravated robbery and kidnapping, both with firearm specifications. For the reasons set forth below, we affirm the judgment of the trial court.
 {¶ 2} Appellant was indicted on one count of aggravated robbery in violation of R.C. 2911.01, one count of kidnapping in violation of R.C. 2905.01 and one count of felonious assault in violation of R.C. 2903.11, each carrying a one-year and three-year firearm specification. The matter proceeded to a jury trial.
 {¶ 3} Cleveland police officers heard shots fired on the night of November 9, 2002. Officers responded and upon arriving at the scene, they found appellant standing over Michael Smith ("victim") who was on his hands and knees. Appellant immediately fled the scene on foot and a chase ensued. Officer Ryan McMahon and his partner tended to the visibly upset victim, who stated that appellant had a gun and had just robbed him. The officers put the victim in their patrol car to search for appellant. Meanwhile, another officer chased appellant on foot.
 {¶ 4} Police eventually found appellant hiding under a pickup truck in a driveway. One of the officers recovered the gun that appellant had discarded while he was running from police. Appellant was wearing the same clothes as the suspect at the scene of the crime, was breathing hard and appeared to be sweating. The victim identified appellant as the perpetrator of the robbery. At trial, however, the victim initially refused to testify and when ordered by the court to do so, and claimed a complete lack of memory of the night in question.
 {¶ 5} The jury thereafter found the defendant guilty of aggravated robbery and kidnapping, both with a three-year firearm specification, and not guilty of felonious assault. He was thereafter sentenced. It is from this ruling that appellant now appeals, asserting six assignments of error for our review.
 {¶ 6} "I. The trial court erred in its examination of the victim after calling the victim to testify as a court's witness."
 {¶ 7} In his first assignment of error, appellant maintains that the trial court erred during its examination of the victim witness. Specifically, he contends that the trial court's continued persistence of the victim may have given the jury the impression that the judge was not impartial and thus the defendant "may" have been prejudiced thereby.[1] We disagree.
 {¶ 8} A trial court has discretion to control the mode and order of the interrogation of witnesses. Evid. R. 611, See Statev. Davis (1992), 79 Ohio App.3d 450, 453-454. Specifically, Evid.R. 614(A) and (B) provide that a trial court may, on its own motion or by motion of a party, call witnesses and interrogate them in an impartial manner. In questioning a witness pursuant to Evid.R. 614(B), a court may not indicate by its intensity, tenor, range and persistence the court's opinion of a witness's credibility or the sufficiency of the evidence. Statev. Davis, supra. at 454. Furthermore, a trial judge's questions must be relevant and void of a suggestion of bias for one side over another. Sandusky v. Degidio (1988), 51 Ohio App.3d 202,204 citing State v. Kay (1967), 12 Ohio App.2d 38.
 {¶ 9} This court reviews a trial court's interrogation of a witness for an abuse of discretion. State v. Prokos (1993),91 Ohio App.3d 39, 44; State v. Davis, supra. at 454. An abuse of discretion implies that the trial court's judgment was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217. When applying this standard of review, an appellate court must not substitute its judgment for that of the trial court. State v. Reiner,93 Ohio St.3d 601, 2001-Ohio-1800 citing Berk v. Matthews (1990),53 Ohio St.3d 161.
 {¶ 10} Further, "challenged statements and actions of the trial judge in a criminal case will not justify a reversal of the conviction, where the defendant has failed in light of the circumstances under which the incidents occurred to demonstrate prejudice." State v. Wade (1978), 53 Ohio St.2d 182, paragraph two of the syllabus, vacated as to death penalty (1978),438 U.S. 911. There, the Ohio Supreme Court set forth criteria to determine whether a trial judge erred by making improper remarks:
 {¶ 11} "Generally, in determining whether a trial judge's remarks were prejudicial, the courts will adhere to the following rules: (1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel."
 {¶ 12} Id. at 188.
 {¶ 13} "In the absence of any showing of bias, prejudice, or prodding of a witness to elicit partisan testimony, it will be presumed that the trial court acted with impartiality [in propounding to the witness questions from the bench] in attempting to ascertain a material fact or to develop the truth."State v. Baston (1999), 85 Ohio St.3d 418, 426, citing Jenkinsv. Clark (1982), 7 Ohio App.3d 93, 98.
 {¶ 14} In this case, appellant asserts that the trial court's frustration with the victim's reluctance to answer its questions and the court's persistence could have given the jury the impression that the judge was biased and, as a result, may have prejudiced appellant. However, appellant has not met his burden of demonstrating prejudice. He has wholly failed to establish or even allege how the trial court's questioning of the state's witness prejudiced him.
 {¶ 15} Nonetheless, in reviewing the exchange between the trial judge and witness in light of the totality of the circumstances, it is clear that the trial judge's initial repetitive questions were made only in an attempt to elicit some form of testimony from the victim who was refusing to answer any question posed to him. The trial judge asked the victim how he came to know the defendant, at which point he made clear to the court that he had no intention of answering any questions. The trial court continued to ask the victim this question and explained that he could be held in contempt of court for failing to answer. The trial judge finally elicited an answer from the witness, that he did not remember how he came to know the defendant, and the repetitive line of questioning ceased. Thereafter, the court posed questions in an attempt to ascertain facts regarding the night in question.
 {¶ 16} During a trial, the judge may, in the interest of justice, act impartially in developing facts germane to an issue of fact to be determined by the jury. State v. Davis, supra, at 454, citing Lodi v. McMasters (1986), 31 Ohio App.3d 275. We find that the trial judge's questions were relevant and furthermore, did not indicate to the jury that the trial judge was biased.
 {¶ 17} Furthermore, assuming arguendo that the jury had the impression that the trial judge was not impartial, the trial judge issued the following curative statement in its charge to the jury:
 {¶ 18} "* * * it is my job to be fair and impartial. If in conducting my role, in deciding what is in and out of evidence, if I did or said anything that leads you to believe that I think the case should come out one way or the other * * * you need to set that aside."
 {¶ 19} "You are, as jurors, are the only finders of fact in this room. * * * [I]f I said or did anything that leads you to believe that I am leaning one way or the other, please know that it is your decision and you are the only fact finders in this room." (T. 654-655).
 {¶ 20} This assignment of error is overruled.
 {¶ 21} "II. The state failed to lay a proper foundation prior to reading the victim's statement into evidence pursuant to Evid.R. 803(5)."
 {¶ 22} In his second assignment of error, appellant alleges that he was denied a fair trial when the trial court allowed the state to read the victim's statement into evidence without first laying a proper foundation.
 {¶ 23} In support of his contention, appellant relies on Evid.R. 612, writing used to refresh memory, and Evid.R. 803(5), the recorded recollection exception to the hearsay rule. Specifically, he maintains that, since this was not a situation where the witness was testifying differently at trial and was now being impeached with a prior inconsistent statement, Evid.R. 612 and 803(5) govern. We reject this contention and find appellant's reliance on these rules (5) misplaced.
 {¶ 24} As stated in the above assignment of error, the victim was called as the court's witness. Evid.R. 607 provides that "[t]he credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage." However, it is well-settled that the state may impeach a witness called by the court with prior inconsistent statements even though the state cannot demonstrate surprise. State v.Stadmire, Cuyahoga App. No. 81188, 2003-Ohio-873, citing Statev. Dacons (1982), 5 Ohio App.3d 112, syllabus. In Dacons, the court stated:
 {¶ 25} "In State v. Adams (1980), 62 Ohio St.2d 151,404 N.E.2d, upon request of the state, a witness was called as the court's witness because she had made statements in the past that were inconsistent and would be inconsistent with her expected trial testimony. The witness was called by the court who asked a short series of non-leading questions and then permitted both prosecution and defense the opportunity to cross-examine. The Supreme Court held that, under Ohio common-law rules of evidence, the prosecution, had it called the witness, would have been deemed to have vouched for her credibility and could not thereafter have impeached her. The court stated that the trial court had the power under common-law evidentiary rules to call witnesses in the exercise of sound discretion. The court rejected the argument of the defense that it would be unfair to permit the prosecution to gain the right to impeach the witness and to be able to ask leading questions of the witness. The Supreme Court found no abuse of discretion, as there was justification in that the witness' testimony would be beneficial to the jury in performing its fact-finding responsibilities."
 {¶ 26} In order to introduce a witness's prior inconsistent statement a proper foundation must be laid, which is accomplished when a witness denies making the prior statement. State v. Soke
(1995), 105 Ohio App.3d 226, citing State v. Riggins (1986),35 Ohio App.3d 1, 3; State v. Minor (1988), 47 Ohio App.3d 22. Further, when a witness claims a lack of memory regarding the events described in a prior statement, the prior statement is considered inconsistent and is therefore admissible. State v.Portis, Franklin App. No. 01AP-1458, 2002-Ohio-4501 (A proper foundation for the admission of extrinsic evidence of a prior inconsistent statement is made upon a witness stating that she did not recall making the prior statement; "extrinsic evidence which contradicts a witness's testimony and if offered solely for impeachment purposes is admissible where the evidence is `critical determining the credibility of a witness's story.' quoting State v. Bowman (2001), 144 Ohio App.3d 179, 187) also citing State v. Hartman (Apr. 5, 1999), Clermont App. No. CA-98-06-040; State v. Marsh (Sept. 30, 1985), Warren App. No. CA84-11-080; State v. Clarke (June 20, 1991), Scioto App. No. CA-1858.
 {¶ 27} Evid.R. 613 provides for impeachment by self-contradiction of prior inconsistent statements and states, in relevant part:[2]
 {¶ 28} "(A) In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.
 {¶ 29} "(B) Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:
 {¶ 30} "(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
 {¶ 31} "(2) The subject matter of the statement is one of the following:
 {¶ 32} "(a) A fact that is of consequence to the determination of the action other than the credibility of a witness."
 {¶ 33} In this case, we find that a proper foundation was laid for impeachment using the victim's prior inconsistent statement during cross-examination by the state when the victim claimed a complete lack of memory regarding the night of the alleged aggravated robbery. The state properly impeached the victim by questioning him regarding the detailed events which appeared in the statement to police. We therefore reject appellant's contention that a proper foundation was not laid for the introduction of the victim's prior inconsistent statement and overrule this assignment of error.
 {¶ 34} "III. The introduction of the preliminary hearing testimony of Michael Smith was improper and prejudicial, thereby denying defendant his right to a fair trial."
 {¶ 35} In his third assignment of error, appellant claims that the trial court erred in allowing the introduction of testimony from the victim's preliminary hearing. Specifically, he maintains that the state failed to satisfy the requirements of Evid.R. 804 prior to cross-examining the victim regarding his testimony in the preliminary hearing. For the reasons set forth in the above assignment of error, we find that the preliminary hearing testimony offered by the victim qualifies as a prior inconsistent statement and was therefore admissible for impeachment purposes. Therefore, we need not address the alternative grounds under which this testimony would be admissible. See Evid.R. 804(A)(3), 804(B)(1), 801(D)(1)(a). This assignment of error is overruled.
 {¶ 36} "IV. The trial court erred by allowing impermissible hearsay evidence at trial."
 {¶ 37} Appellant challenges the trial court's decision to allow Detective Terrace to testify regarding a conversation she had with the victim the morning of the trial. Appellant avers that the trial court improperly allowed Detective Terrace's hearsay testimony and, as a result, appellant was prejudiced. The state maintains that the detective's testimony was not hearsay and was thus admissible.
 {¶ 38} The admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173. To find an abuse of discretion, we must find that the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore, supra. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered into evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is inadmissible unless it falls within one of the exceptions enumerated in the rules of evidence.
 {¶ 39} In this case, the state offered the testimony of Detective Terrace, who had spoken with the victim on the morning of trial. The victim repeatedly testified that he could "not recall" any details regarding the night of the alleged aggravated burglary. In order to demonstrate that the victim did, in fact, remember the alleged robbery, the state offered Detective Terrace's testimony. The state also sought to demonstrate that the victim had knowledge of the statements he had previously made using the detective's testimony. In that regard, Detective Terrace's testimony was not hearsay, since it was not offered to prove the truth of the victim's statements. However, upon further questioning of Detective Terrace, the following testimony was offered:
 {¶ 40} "Q. Did he say whether he remembered the events that were in his statement?
 {¶ 41} "A. Yes. He remembered them.
 {¶ 42} "Q. Did you ask him any questions regarding the statement?
 {¶ 43} "A. Yes, I did.
 {¶ 44} "Q. What did you ask him?
 {¶ 45} "A. I asked him if it his statement was truthful.
 {¶ 46} "Q. And how did he respond?
 {¶ 47} "A. He said it was."
 {¶ 48} (T. 486-487). We find this portion of Detective Terrace's testimony is hearsay and should have been excluded by the trial court. Nonetheless, we find the trial court's error harmless. The state had already successfully introduced testimony regarding the victim's statements to police and impeached the victim during cross-examination. The credibility of the victim, who, at trial claimed a complete lack of knowledge of the robbery, had been undermined by the state and the evidence of the statement before the jury. In light of the other evidence weighing against appellant, including the officers' testimony that they witnessed appellant flee from the scene of a crime with a firearm, we find the trial court's error harmless. Furthermore, the state successfully undermined the credibility of the victim, thereby bolstering the veracity of the victim's statements on the night of the robbery, which were introduced during cross-examination.
 {¶ 49} We refuse to find that the trial court abused its discretion such that "the result was so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." Huffman v. Hair Surgeon, Inc. (1985),19 Ohio St.3d 83, 87. We therefore overrule this assignment of error.
 {¶ 50} "V. The jury's verdict was against the manifest weight of the evidence."
 {¶ 51} In determining whether a verdict is against the manifest weight of the evidence the appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, citing Tibbs v. Florida (1982), 457 U.S. 31, 38, 42. AccordState v. Otten (1986), 33 Ohio App.3d 339, 340. An appellate court must use discretion and only reverse convictions in extraordinary cases where the evidence clearly weighs in favor of reversal. State v. Thompkins, supra.
 {¶ 52} R.C. 2911.01 provides, in relevant part:
 {¶ 53} "(A) No person, in attempting or committing a theft offense, * * *, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 54} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it or use it * * *."
 {¶ 55} R.C. 2905.01 provides, in relevant part:
 {¶ 56} "(A) No person, by force, threat, or deception, * * * shall remove another person from the place where the other person was found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 57} "(2) To facilitate the commission of any felony or flight thereafter; * * *."
 {¶ 58} In this case, Officer Ryan McMahon testified that he and his partner responded to a "shots fired" radio dispatch. Upon arriving at the scene, they found appellant standing over the victim who was on his hands and knees. When the police pulled up, appellant turned to look at the police and then immediately fled the scene on foot. Officer McMahon noticed that he was wearing a blue windbreaker with reflective stripes on the sleeves.
 {¶ 59} Officer McMahon approached the visibly upset victim, who stated that appellant had a gun and had just robbed him. Officer McMahon testified at trial that he smelled gunpowder on the scene. The officers put the victim in the backseat of their police car to search for appellant. Upon spotting appellant, Officer McMahon exited the police cruiser and began a foot chase.
 {¶ 60} Officer Mazarri, the officer who initially heard the gun shot, observed the suspect running and began a foot chase. The suspect continued to run even after Officer Mazarri gave repeated orders for him to stop. The suspect ran through a fence and a tangle of vines, with Officer Mazarri following shortly behind him. Officer Mazarri found a revolver with four bullets and a spent casing laying on the ground where the suspect had just run.
 {¶ 61} Officer McMahon located the suspect, who was dressed in the same clothes as the person who initially fled the scene. Appellant was breathing hard and appeared to be sweating. The victim identified appellant as the perpetrator.
 {¶ 62} Despite the victim's claimed lack of memory of the night in question, there was substantial evidence which supported appellant's conviction. In reviewing this evidence, we find that the jury did not lose its way in convicting appellant for aggravated robbery and kidnapping with firearms specifications. This assignment of error is without merit.
 {¶ 63} "VI. The trial court erred by failing to notify the defendant of the post release control provisions of R.C. 2929.19
(B)(3)."
 {¶ 64} Appellant complains that he was not notified of post-release control provisions and maintains that this matter be remanded for compliance with R.C. 2929.19 (B)(3).
 {¶ 65} Pursuant to R.C. 2929.19 (B)(3), the trial court has a mandatory duty at the sentencing hearing to notify the defendant that he is subject to post-release controls. State v. Bryant,
Cuyahoga App. No. 79841, 2002-Ohio-2136; State v. Rashad (Nov. 8, 2001), Cuyahoga App. No. 79051; State v. Wright (Sept. 28, 2000), Cuyahoga App. No. 77748. "At sentencing" means "at the sentencing hearing," rather than "in the sentencing entry."State v. Bryant, supra.
 {¶ 66} R.C. 2967.28 (B)(1) provides that a felony of the first degree carries a mandatory five-year period of post release control. In State v. Johnson, Cuyahoga App. No. 80459, 2002-Ohio-4581, this court held that a trial court's failure to impose a mandatory term of post-release control constitutes a statutorily incorrect sentence which is void, not merely voidable. Id. at paragraph 26. "Because the court has no discretion to avoid the imposition of post-release control in this case, any order other than a remand would constitute an attempt to render the sentence a nullity." State v. Harris,
Cuyahoga App. No. 81677, 2003-Ohio-1003.
 {¶ 67} A review of the record reveals that the notification of post-release control appears in the sentencing entry. However, the sentencing hearing transcript reveals that the trial court failed to satisfy the notification requirements of R.C. 2929.19
(B)(3) at the sentencing hearing. Thus, we sustain this assignment of error and remand this case for the sole purpose that appellant be advised of post-release controls.
 {¶ 68} Judgment affirmed in part and remanded.
 Celebrezze, Jr., J., Concurs.
 ANNE L. KILBANE, P.J., Concurs in part and Dissents in part.(See attached Concurring and Dissenting Opinion)
[1] Appellant does not challenge the propriety of the court's decision to call the victim as the court's witness. Rather, he challenges the manner in which the trial judge questioned the victim. (Appellant's brief, p. 19)
[2] The staff notes to Evid.R. 613, which was amended effective July 1, 1998, state "The amendments codify aspects of the Ohio common law of impeachment concerning prior inconsistent statements and conduct. The title of the rule was changed from `Prior Statements of Witness' to `Impeachment by Self-Contradiction' to more accurately reflect the content of the rule, which deals with prior inconsistent conduct as well as prior inconsistent statements."