JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Darllel Orr appeals from his convictions and a portion of his sentence after a jury convicted him of two counts of aggravated robbery with firearm specifications, two counts of kidnapping with firearm specifications, carrying a concealed weapon, and having a weapon while under disability.
 {¶ 2} Appellant asserts the court improperly refused to accept his negotiated plea agreement with the state prior to trial, thus compelling his case to be presented to the jury. Appellant further asserts that since the trial court failed properly to notify him of mandatory post-release control during sentencing, post-release control should not be imposed.
 {¶ 3} This court disagrees with appellant's first assertion; therefore, his convictions are affirmed. Appellant's second assertion is only partially persuasive; therefore, although his sentence is lawful, this case is remanded with instructions to the trial court to conduct a sentencing hearing for the limited purpose of completely informing appellant of the requirement that he serve a period of five years of post-release control.
 {¶ 4} Appellant's convictions result from an incident that occurred on the night of April 25, 2003. Pierre Lauderdale, a young man who suffered from muscular dystrophy, had driven his sister's two-door Buick Riviera over to pick up his friend Daunteze Bell. Later, after he found something to do, Lauderdale intended to permit Bell to have the car, because Bell needed transportation to Parma during business hours in order to pay a number of outstanding fines assessed against him. Bell carried a significant amount of cash for this purpose.
 {¶ 5} The two traveled around for a time. Bell eventually fell lightly asleep in the passenger's seat. At approximately 1:30 a.m., Lauderdale stopped in the parking lot of a bar he frequented at East 119th Street and Miles Avenue. He was eating some take-out food when he received a cellular telephone call from appellant. Lauderdale was somewhat surprised by the call, since he barely knew appellant, but he chatted briefly.
 {¶ 6} About a half an hour later, Lauderdale's cellular telephone rang again. This time, the caller was a female. Although he did not recognize her voice, Lauderdale conversed with her and became intrigued when she invited him to her location.
 {¶ 7} The woman indicated she was in a house near the intersection of East 75th Street and Ivy Avenue. She instructed him that when he arrived, he should pull into the driveway and proceed all the way to the back of it. Lauderdale demurred, telling her he was not that polite and would stop only at the curb. While Lauderdale was speaking, Bell roused briefly, heard his friend's bantering tone and understood the caller was a woman, laughed at his friend, and returned to his slumber.
 {¶ 8} Lauderdale proceeded to the address the woman had provided. He had halted on the street and was peering at the house when suddenly his attention was drawn to a four-door Honda Accord that pulled in front of him, cutting off any possibility of forward progress. A man Lauderdale later identified as appellant sprang from the rear driver's side of the Accord. Appellant had a gun in his right hand
 {¶ 9} Lauderdale placed the transmission of his car into reverse and pressed the gas pedal. Although it responded, the car quickly ran into another vehicle on the street. Bell awoke upon the impact. Appellant was upon Lauderdale's car immediately; he struck the driver's side window with the gun, shattering the glass, then forced his way into Lauderdale's seat, pushing Lauderdale onto the console area and into Bell. As the struggle occurred, Bell considered leaping out, but decided against it when he saw one of appellant's accomplices had appeared at the passenger window with a gun.
 {¶ 10} When he obtained control of the car, appellant drove it away from the area with his cronies following in the Accord. Appellant demanded money, pointing the gun at them with one hand while he steered with the other. Lauderdale had approximately $120 to give him, but Bell indicated he had a lot of cash in one of his pockets; Bell told appellant to take it and asked appellant to let him go.
 {¶ 11} Appellant stopped the car on a side street. While his accomplices approached, he took Bell's money and began pulling at the earring Bell wore; Lauderdale thought appellant additionally sought to force them into the rear of the car. Bell resisted, which led one of appellant's colleagues in the Accord to assist in the intimidating tactics. The door opened, the man encouraged appellant to "shoot the f____g b____h a — n____r," and then he dragged Bell out as appellant yelled that he had dropped his gun.
 {¶ 12} Bell endured a few kicks before rolling under the car. From that vantage point, he saw that Lauderdale also was pulled from the car and hurled to the pavement, but before appellant and his accomplices could do more, some pedestrians came into view. The pedestrians started screaming at the assailants. A nearby homeowner immediately telephoned the police to tell them an apparent robbery just had occurred. Appellant leaped into the driver's seat of the Accord as his friends jumped into the car, and the Accord sped away.
 {¶ 13} Upon the assailants' departure, Bell picked Lauderdale up, placed him into the Riviera's passenger seat, and drove off. Bell had gone only a few blocks when he saw a police car parked at an intersection. He stopped, and as he attempted to explain the incident to the officer, he heard a broadcast over the officer's radio of a foot pursuit of the suspects in progress.
 {¶ 14} The Accord had been spotted and followed by another patrol car; the officers who saw it watched it stop and its occupants "bail" out near the intersection of East 65th
Street and Hind Avenue. One officer went in foot pursuit of the Accord's driver while the other waited for back-up.
 {¶ 15} During the pursuit, the Accord's driver, appellant, pulled a gun from his waistband as he ran, but lost it as he scaled a fence. Although other officers quickly joined the chase, only appellant was apprehended; his accomplices escaped. As he was being handcuffed, appellant protested he didn't know why the officers were "messing with" him, since he "didn't rob nobody."
 {¶ 16} Bell and Lauderdale identified appellant as the man who had accosted, robbed, and struck them. The gun appellant had used during the incident was recovered from the floor of the Riviera, and the police also located the gun appellant dropped while he was chased.
 {¶ 17} Appellant subsequently was indicted on two counts of aggravated robbery and two counts of kidnapping, all with both one- and three-year firearm specifications, one count of carrying a concealed weapon, and one count of having a weapon while under disability. Although appellant initially was assigned an attorney to represent him, he later retained counsel.
 {¶ 18} The record reflects a long period of discovery in the case. On the date set for trial, the court first requested the prosecutor to place on the record the status of any plea negotiations between the parties. The prosecutor listed the crimes and their potential penalties, and stated an offer had been made to appellant.
 {¶ 19} Pursuant to the "offer on the table," the state would amend the first count of the indictment to include both victims and to delete the three-year firearm specification, and in exchange for appellant's plea of guilty to the aggravated robbery charge as amended, plus the carrying a concealed weapon charge, the remaining charges would be dismissed.
 {¶ 20} Appellant's attorney acknowledged the offer. He thanked the trial court for permitting the defense time to consider it, indicated appellant was having difficulty coming to a decision, and reminded the court of the defense motion to "voir dire the witnesses" prior to concluding negotiations.
 {¶ 21} The trial court turned to appellant. After informing him of the potential reduction in the penalties he faced, it asked appellant if he "want[ed] to go to trial." Appellant responded he was "taking everything into consideration," and he was "going to see." The court informed appellant that, because trial would not be stopped for a plea, this was his last opportunity to accept. However, it would permit voir dire of one witness.
 {¶ 22} The prosecutor chose Bell for the voir dire. Bell gave his version of the incident at length before the court excused him. At that point, the parties turned their attention to conducting the trial, but the court addressed appellant one last time, reminding him he faced "4 to 45 years" rather than the offer of "4 to 12 ½ years."
 {¶ 23} Appellant suggested to the trial court his attorney did not fully support him, but, after a thorough discussion of his comment, appellant acknowledged defense counsel had been "very good." Further discussion on the record with the trial court eventually led appellant to request another consultation with his attorney. The court granted appellant's request.
 {¶ 24} After a recess, defense counsel informed the court appellant had decided to accept the plea. The trial court thereupon began a full plea hearing. During the colloquy, however, appellant again suggested he had no choice but to enter a plea. Once more, the court discussed the comment at length, and then reiterated the charges along with the potential penalties involved in the plea agreement. Appellant stated he didn't understand The trial court repeated its statements.
 {¶ 25} As the colloquy continued, appellant indicated he understood everything to which he was agreeing, but when the trial court asked if there was anything he did not understand, appellant asked if, during trial, some of the charges might be "dropped." The court proceeded to explain the state's burden of proof, the jury's function, and defense counsel's role. Appellant thereafter indicated he would like more time to consider his decision to accept the plea. The court told appellant he could decide over a break for lunch, but warned him about "playing around" with the court. Trial commenced after the break.
 {¶ 26} After the presentation of the state's case, the jury convicted appellant of all six counts of the indictment. The trial court obtained a presentence report before it sentenced appellant to serve a total term of six years of incarceration for his convictions.
 {¶ 27} Appellant presents the following three assignments of error for review:
 {¶ 28} "I. The trial court erred in failing to engage in a meaningful plea colloquy with Mr. Orr and not allowing Mr. Orr to accept the state's plea offer.
 {¶ 29} "II. The trial court abused its discretion in not accepting the plea agreement as negotiated between the state of Ohio and the defendant.
 {¶ 30} "III. The trial court erred in imposing post[-]release control in its journal entry when it failed to advise the appellant of its terms at the time of sentencing."
 {¶ 31} Appellant's first two assignments of error are not separately argued as required by App.R. 16(A)(7); therefore, this court will not separately address them. Appellant essentially asserts the trial court refused to accept his plea and thus compelled him to go to trial on all of the charges. Since, however, the record belies appellant's assertion, it is rejected.
 {¶ 32} As the recitation of the facts of this case demonstrates, it was not the trial court, but appellant, who refused to accept the plea.
 {¶ 33} The transcript shows that as the potential jurors waited for voir dire to begin, the trial court spent the entire morning in discussion with appellant as to whether he would accept the plea offer made by the state. Finally, before the lunch break, although the court's patience clearly was nearing an end, the court told appellant it would "send the jury to lunch and [everyone] would come back and try the case" afterward "if that is what [appellant] want[ed]."
 {¶ 34} The transcript reveals voir dire began when proceedings recommenced without objection by appellant. Presumably, therefore, appellant had not accepted the state's offer. Moreover, nowhere in the record is there an indication that appellant ever was desirous of entering an unconditional plea of guilty. Under these circumstances, the trial court did not act improperly. Crim.R. 11(C)(2); State v. Pearce (May 6, 1993), Franklin App. No. 92AP-1761.
 {¶ 35} Appellant's first two assignments of error, accordingly, are overruled.
 {¶ 36} Appellant next challenges his sentence. He asserts the trial court failed to inform him he was subject to post-release control. The transcript of appellant's sentencing hearing indicates he is incorrect; therefore, his third assignment of error is overruled. However, the transcript further indicates the trial court made a mistake that requires rectification.
 {¶ 37} After announcing the length of appellant's term, the trial court stated it also would place appellant "on community control for three years, during which time [appellant would] pay a fine of five thousand dollars plus court costs."
 {¶ 38} The trial court obviously intended by the foregoing to inform appellant he was subject to a period of post-release
control upon his release from prison. The court used the wrong word, however, when it termed the period as "community" control.
 {¶ 39} Morever, pursuant to R.C. 2967.28(B)(1), appellant's most serious convictions, viz., his convictions for first-degree felonies, carry a mandatory five-year period of post-release control, rather than a period of three years.
 {¶ 40} Thus, in order to satisfy the directive set forth in R.C. 2929.19(B)(3), this court deems it necessary to remand this case to the trial court for the sole purpose of holding a limited sentencing hearing at which appellant is advised he is subject to a five year statutory period of post-release control. State v.Wilbon, Cuyahoga App. No. 82934, 2004-Ohio-1784.
 {¶ 41} Accordingly, appellant's convictions and sentence are affirmed, but this case is remanded for further proceedings consistent with the instruction set forth above.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., J. concurs.
 Blackmon, P.J. concurs in Judgment only.