{¶ 126} I concur in the majority's determination that appellant's first, fourth, and fifth assignments of error lack merit. However, I respectfully dissent from the majority's application of a plain error analysis to appellant's second assignment of error and decision to reverse appellant's conviction based on that assignment. For the reasons discussed below, appellant's second and sixth through eleventh assignments of error are without merit, and appellant's conviction for aggravated murder should be affirmed.
 {¶ 127} As the majority correctly notes, appellant's counsel failed to make a timely objection to the reading of Art Bell's proferred statements. The analysis of appellant's second assignment of error could and should stop there. The majority, however, pursues a Sixth Amendment "confrontation" analysis to find plain error. Both the majority's analysis and conclusion are misplaced and incorrect.
 {¶ 128} The majority erroneously relies on what it calls an analogous case, Douglas v. Alabama (1965), 380 U.S. 415, to find a violation of appellant's right to confront and cross-examine Art Bell in this case. In Douglas, Loyd, the other perpetrator (the Art Bell figure in that prosecution), invoked his Fifth Amendment right when called to testify against Douglas. Id. at 416. The prosecution was then allowed to read Loyd's purported prior confession and ask Loyd "did you make that statement?" Loyd asserted his right against self-incrimination and refused to answer. Id. The confession implicated Douglas. Because Loyd invoked his fifth amendment right not to answer, Douglas could not cross-examine Loyd. For that reason, The U.S. Supreme Court reversed Douglas' conviction. Id. at 419-420.
 {¶ 129} The primary focus behind the U.S. Supreme Court's ruling in Douglas is not "ownership," as the majority opines. Rather, the U.S. Supreme Court, quoting its prior ruling inMattox v. United States (1895), 156 U.S. 237, 242-243, framed the "primary object" of the Sixth Amendment's Confrontation Clause providing an accused "an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." Douglas, 380 U.S. at 419.
 {¶ 130} The facts and circumstances in Douglas are not analogous to the instant case. In the present case, Art Bell disavowed making the statements read by the prosecution. This did not prevent appellant's counsel from cross-examining Art Bell. In fact, appellant's counsel cross-examined Art Bell and elicited contradictory statements from him and testimony that was beneficial to appellant. Appellant clearly had the opportunity to confront and cross-examine Art Bell. Thus, appellant's trial counsel was able to test Art Bell's recollection and hold him up to the jury so that the jury could decide whether he was worthy of belief. In Douglas, the accused's counsel did not have this opportunity because the co-perpetrator invoked hisFifth Amendment right against self-incrimination. A plain error analysis based on Douglas is, therefore, not warranted.
 {¶ 131} In support of his second assignment of error, appellant contends that the trial court erred in allowing the prosecution to impeach its own witness, Art Bell, with his prior statement.
 {¶ 132} "The credibility of a witness may be attacked byany party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage." Evid.R. 607(A) (emphasis added). "Surprise can be shown if the testimony is materially inconsistent with the prior written or oral statements and counsel did not have reason to believe the witness would recant when called to testify."State v. Davie (Dec. 27, 1995), 11th Dist. No. 92-T-4693, 1995 Ohio App. LEXIS 6064, at *83-*84, quoting State v. Stearns
(1982), 7 Ohio App.3d 11, 15. The question of surprise is one within the broad discretion of the trial Court. Davie,
1995 Ohio App. LEXIS 6064, at *84-*85.
 {¶ 133} In this case, the prosecution informed the trial court that it had not spoken with Art Bell since he gave his pre-trial statement. The prosecution further stated that it had no reason to believe that Art Bell would not testify in accordance with his prior statement. Moreover, the record is void of any evidence showing that the prosecution was aware that Art Bell would testify in this manner. Thus, the prosecution established that the testimony provided by Art Bell satisfied the surprise element of Evid.R. 607(A). See State v. Stearns
(1982), 7 Ohio App.3d 11, 15, (citations omitted) ("Surprise can be shown if the testimony is materially inconsistent with the prior written or oral statements and counsel did not have reason to believe the witness would recant when called to testify.").
 {¶ 134} Notwithstanding the establishment of surprise, the prosecution must also demonstrate that Art Bell's testimony affirmatively damaged its case. "Affirmative damage can be shown if the party's own witness' testimony contradicts, denies, or is harmful to that party's trial position." Davie, 1995 Ohio App. LEXIS 6064, at *84 (citation omitted). A neutral answer, such as "I don't know," however, does not demonstrate the requisite affirmative damage. See, e.g., State v. Keenan (1993),66 Ohio St.3d 402, 412. Accordingly, if a witness merely responds to a direct-examination question with a neutral answer, affirmative damage has not been established and the witness may not be impeached with a prior statement pursuant to Evid.R. 607(A).
 {¶ 135} Art Bell's direct-examination testimony consisted of answers such as "I can't remember that" and "I don't remember that." Thus, Art Bell repeatedly claimed a lack of memory about the events covered in his prior statement. In fact, the majority correctly stated, "Art Bell consistently expressed uncertainty and a lack of recollection as to his prior, unsworn statements concerning the factual events of the murder for hire scheme."
 {¶ 136} "[W]hen a witness claims a lack of memory regarding the events described in a prior statement, the prior statement is considered inconsistent." State v. Wilbon, 8th Dist. No. 82934, 2004-Ohio-1784, at ¶ 26 (citation omitted); see, also, State v.Baker (2000), 137 Ohio App.3d 628, 651 (citation omitted);State v. Hartman (Apr. 5, 1999), 12th Dist. No. CA98-06-040, 1999 Ohio App. LEXIS 1476, at *16 (citation omitted). Considering that the prosecution already established the requisite surprise element of Evid.R. 607(A), as discussed above, the proper foundation for the admissibility of Art Bell's prior statement was laid when Art Bell, on direct examination, repeatedly claimed a lack of knowledge regarding the events as contained in his prior statement. See Evid.R. 607(A), Davie, 1995 Ohio App. LEXIS 6064, at *84, Wilbon, 2004-Ohio-1784, at ¶ 33; Hartman,
1999 Ohio App. LEXIS 1476, at *16-*17; State v. Marsh (Sept. 30, 1985), 12th Dist. No. CA84-11-080, 1985 Ohio App. LEXIS 7189, at *12-*13 (citation omitted). Thus, his prior statement was admissible. Evid.R. 607(A).[5]
 {¶ 137} Moreover, even if a witness' testimony during direct-examination fails to establish the requisite affirmative damage, if a witness's testimony during cross-examination demonstrates affirmative damage, "[a]ny error in permitting the prosecutor to impeach testimony by his own witness[, who initially on direct-examination gave neutral answers,] was cured by the later testimony affirmatively denying [his prior statement]." Stearns, 7 Ohio App.3d at 16. In other words, "[t]he order in which the testimony [is] adduced is not significant, so any original error became harmless beyond a reasonable doubt." Id.
 {¶ 138} In this case, even if Art Bell did not provide contradictory testimony during his direct-examination, it is clear from the record that he did give contradictory testimony on cross-examination. During cross-examination, Art Bell testified that although he had given money to appellant on behalf of Pough, he had no idea of the purpose for which the payment was made. This testimony clearly contradicts his pre-trial statement in which he asserted that he thought the payment to appellant had something to do with the murder-for-hire scheme which resulted in McMillan's death. Thus, even if Art Bell's direct examination did not provide the requisite affirmative damage, the introduction of Art Bell's prior statement during direct-examination would constitute harmless error since Art Bell made contradictory statements during cross-examination. Id.
 {¶ 139} Appellant further argues in support of his second assignment of error that certain portions of Art Bell's pre-trial statement included inadmissible hearsay statements made by Pough and Eggleston. Therefore, appellant maintains that the trial court erred by allowing these statements to be read by the prosecution during trial. Appellant's argument is without merit.
 {¶ 140} "A statement is not hearsay if * * * [t]he statement is offered against a party and is * * * a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy." Evid. R. 801(D)(2)(e). "[T]he statement of a co-conspirator is not admissible pursuant to Evid. R. 801(D)(2)(e) until the proponent of the statement has made a prima facie showing of the existence of the conspiracy by independent proof." State v. Carter,72 Ohio St.3d 545, 550, 1995-Ohio-104. To establish independent proof of a conspiracy, the prosecution must prove: (1) the existence of a conspiracy; (2) the defendant's participation in the conspiracy; (3) the declarant's participation in the conspiracy; (4) that the statement was made during the course of the conspiracy; and (5) that the statement was made in furtherance of the conspiracy. Baker, 137 Ohio App.3d at 653
(citation omitted).
 {¶ 141} The existence of a conspiracy was affirmatively established by Pough's testimony. Pough testified that he paid Eggleston to kill McMillan. Appellant's participation in the conspiracy was demonstrated by evidence of his receipt of the money from Art Bell, on behalf of Pough, for his involvement with McMillan's murder. Art Bell also testified that he informed Pough of McMillan's death. Further evidence at trial demonstrated that Art Bell was involved with a payment of money to appellant believed to be for the murder of McMillan. Thus, the evidence clearly established Art Bell's involvement in the conspiracy. The alleged hearsay statements that appellant refers to were made by Pough and Eggleston during the course of the conspiracy. Moreover, these statements displayed the amount and manner of payment that would be used for the murder-for-hire scheme. Thus, these statements were in furtherance of the conspiracy.
 {¶ 142} The foregoing confirms that Pough and Eggleston's statements, which were included in Art Bell's pre-trial statement, meet the prerequisites of Evid. R. 801(D)(2)(e). As a result, these statements are not hearsay.
 {¶ 143} Appellant's second assignment of error is without merit.
 {¶ 144} Under his sixth assignment of error, appellant contends that the trial court erred in denying his motion for a new trial before holding a hearing. Appellant maintains that this arbitrary and capricious action caused appellant prejudice and denied him the right of due process.
 {¶ 145} Appellant filed a proper and timely motion for a new trial. On January 18, 2002, a hearing was held and appellant presented testimony from Giles and Thomas. When Thomas unexpectedly asserted his Fifth Amendment right, appellant requested a continuance of the hearing so he could amend and supplement his motion for a new trial. The trial court granted appellant a continuance and explained that once appellant amended his motion, a new hearing date would be scheduled.
 {¶ 146} On March 14, 2002, appellant filed a supplemental motion for a new trial which included the affidavits of Kendra Bell, Giles, and Tisdale. Each affidavit detailed various instances of purported police misconduct and threats, allegedly resulting in Thomas' invalid identification of appellant. After reviewing the supplemental motion and affidavits, the trial court, without a hearing, denied appellant's motion for a new trial.
 {¶ 147} A trial court does not abuse its discretion when it overrules a motion for a new trial that is not properly supported by affidavits as required by Crim. R. 33(C). State v. Hargrove,
11th Dist. No. 2000-A-0068, 2002-Ohio-2944, at ¶ 52 (citation omitted). The decision of whether or not to hold an evidentiary hearing on a defendant's motion for a new trial is within the sound discretion of the trial court. State v. Tomlinson (1997),125 Ohio App.3d 13, 20 (citation omitted); State v. Stewart,
4th Dist. No. 02CA29, 2003-Ohio-4850, at ¶ 10 ("A trial court has broad discretion to determine whether a motion for a new trial merits an evidentiary hearing."). See, also, State v. Smith
(1986), 30 Ohio App.3d 138, 139 ("[a] ruling on a motion for new trial on the ground of newly discovered evidence is within the discretion of the trial court").
 {¶ 148} To prevail on a motion for a new trial based upon newly discovered evidence pursuant to Crim. R. 33(A)(6), the defendant must establish that the new evidence: "(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) * * * could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." State v. Hawkins
(1993), 66 Ohio St.3d 339, 350 (citation omitted).
 {¶ 149} With respect to Kendra Bell's affidavit, the trial court's denial of appellant's opportunity to cross-examine Kendra Bell regarding allegations of police misconduct was in error. Nevertheless, such error was harmless beyond a reasonable doubt because her testimony was superfluous and added no additional substantive evidence. Furthermore, Kendra Bell's affidavit specifically stated that Lt. Bishop attempted to coerce testimony to the effect that she "saw" Art Bell give appellant money. At trial, however, Kendra Bell merely testified that she saw appellant at the Bell house on the day after the murder and that she saw Art Bell with money. Clearly, Kendra Bell's affidavit is not evidence creating a strong probability that a different result would have been reached had a second trial been granted. Thus, the trial court did not abuse its discretion by denying appellant's motion for a new trial, without a hearing, based on Kendra Bell's affidavit.
 {¶ 150} In its judgment entry denying appellant's motion for a new trial, the trial court determined that Giles's affidavit lacked credibility. Giles's affidavit maintained she was present when Lt. Bishop allegedly threatened Thomas with criminal charges if he did not identify appellant as the man he had seen attempting to sell Miller a gun. The trial court found the affidavit of Giles highly suspect. The trial court cited to the fact that, while Giles claimed that she witnessed Lt. Bishop pressure Thomas into selecting appellant's photograph while they were at the Helleck Street residence, three officers offered contradicting affidavits stating that Thomas was shown the photograph only at the Task Force Offices without the presence of Giles. Therefore, the trial court correctly found that "the affidavit lacks credibility and does not support any claim asserted by [appellant] in his motion."
 {¶ 151} To support a motion for new trial, the newly discovered evidence must create a strong probability that a different outcome would result at another trial. Dayton v.Martin (1987), 43 Ohio App.3d 87, 90; see, also, Hawkins,66 Ohio St.3d at 350. Evidence that, if believed, would establish a defendant's innocence, may not be discredited on its face. Statev. Wright (1990), 67 Ohio App.3d 827, 831. Faced with such evidence, a trial court "must afford the movant an opportunity to present evidence at a hearing in support of the motion and affidavit before electing whether to grant or to deny the motion." Id. at 831-832. However, "[e]vidence which merely impeaches or contradicts evidence in the former trial isinsufficient to support a motion for a new trial." Id. at 831 (emphasis added), citing State v. Petro (1940),148 Ohio St. 505, 507-508; see, also, Hawkins, 66 Ohio St.3d at 350.
 {¶ 152} In this case, Giles's affidavit would not establish appellant's innocence. Rather, Giles's affidavit, without more, merely impeaches Thomas' identification testimony. Thomas never recanted his previous trial testimony and identification of appellant as the man who approached Miller to sell him a gun. It is evident that Giles's affidavit is being offered in an attempt to impeach Thomas' trial testimony linking appellant to the murder weapon. This evidence does not establish appellant's innocence, nor does it create a strong probability that appellant would be found not guilty if a new trial were granted. Since this evidence merely impeaches Thomas' trial testimony, the trial court did not abuse its discretion in denying appellant's motion for a new trial without a hearing based on Giles's affidavit.
 {¶ 153} The trial court found Tisdale's affidavit to be "pure hearsay and her testimony * * * wholly inadmissible in a court of law." A careful review of Tisdale's affidavit supports the trial court's determination that the contents of the affidavit are inadmissible hearsay. Because her statements would be inadmissible during both a hearing on a motion for a new trial and a second trial, such evidence cannot create a strong probability that appellant would be found not guilty if a new trial were to be granted. Consequently, the trial court did not abuse its discretion in denying appellant's motion for a new trial without a hearing based on Tisdale's affidavit.
 {¶ 154} Appellant further argues that his motion for a new trial was improperly denied based upon cumulative errors made by the trial court during the trial. Appellant restates the following alleged errors in support of this contention: 1) forbidding Kendra Bell to testify as to Lt. Bishop's alleged police misconduct; 2) hearsay statements admitted during Art Bell's testimony; and 3) supplemental affidavits supplied with his motion for a new trial. As discussed above, the trial court did not err in its disposition of each of the purported errors. Thus, even if viewed cumulatively, the trial court did not abuse its discretion by denying appellant's motion for a new trial without a hearing.
 {¶ 155} Appellant's sixth assignment of error is without merit.
 {¶ 156} Appellant's seventh assignment of error contends that he was denied his constitutional right to a fair trial and due process of law due to prosecutorial misconduct that unfairly prejudiced him. Appellant alleges that the prosecution engaged in misconduct for its failure to disclose evidence that Thomas had failed three polygraph tests regarding his identification testimony. Additionally, appellant contends that the prosecution knowingly elicited false identification testimony from Thomas during trial because of its knowledge of the polygraph results.
 {¶ 157} "The standard of review regarding a claim of prosecutorial misconduct based upon failure to disclose evidence is whether the nondisclosure was material to the finding of guilt based upon the totality of the record, and whether there is a reasonable likelihood that the undisclosed material would have affected the guilty verdict." State v. Frederick, (Nov. 8, 1999), 12th Dist. Nos. CA98-10-094 and CA98-11-101, 1999 Ohio App. LEXIS 5244, at *13-*14 (citation omitted); see, also Statev. Johnston (1988), 39 Ohio St.3d 48. It is axiomatic that the prosecution must have knowledge of the evidence it purportedly failed to disclose to substantiate a claim of prosecutorial misconduct based upon a failure to disclose evidence. Furthermore, pursuant to Crim. R. 33(C), a motion for a new trial based upon claims of prosecutorial misconduct "must be sustained by affidavits showing their truth."
 {¶ 158} In this case, evidence of the results of Thomas' alleged polygraph test originates from Giles's affidavit submitted with appellant's motion for new trial. Appellant has failed to set forth sufficient evidence demonstrating prosecutorial misconduct. The statements in Giles's affidavit pertaining to the alleged polygraph tests are inadmissible hearsay. Giles does not claim to have witnessed the administration of the alleged polygraph tests or to have seen the results. Instead, her testimony reiterates statements purportedly made by Thomas regarding the polygraph tests results. Moreover, Giles's affidavit fails to establish that the prosecution was aware that Thomas had actually taken these alleged polygraph tests or was aware of the results of the alleged polygraph tests. Thus, appellant's claim of prosecutorial misconduct is not sustained by Giles' affidavit since it fails to prove the allegations of a polygraph test. Because appellant failed to show sufficient evidence regarding Thomas' three separate polygraph tests, his subsequent claim that the prosecution engaged in misconduct by knowingly eliciting false identification testimony is also without support.
 {¶ 159} Appellant's seventh assignment of error is without merit.
 {¶ 160} Under his eighth assignment of error, appellant contends that throughout the trial his defense counsel failed to protect his various rights, thereby denying him effective assistance of counsel. This argument lacks merit.
 {¶ 161} To establish ineffective assistance of counsel, appellant must demonstrate "(1) deficient performance by counsel, i.e., that, in light of all the circumstances, counsel fell below an objective standard of reasonable representation, and (2) resulting prejudice, i.e., a reasonable probability that, but for counsel's unprofessional errors, the proceeding's result would have been different." State v. Group, 98 Ohio St.3d 248,2002-Ohio-7247 at ¶ 132 (citation omitted).
 {¶ 162} Appellant first argues that counsel failed to render effective assistance regarding the admission of dog tracking evidence in the following manner: (1) by failing to mention Evid. R. 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc. (1993),509 U.S. 579,[6] in his motion in limine; (2) by failing to hire an expert witness to testify about dog tracking at aDaubert hearing and, if necessary, at trial; and (3) by failing to request a jury instruction that caution should be used when considering dog tracking evidence.
 {¶ 163} Patrolman Merritt's dog-tracking testimony was not expert witness testimony under Evid. R. 702 and Daubert.
Therefore, appellant's counsel did not render ineffective assistance of counsel by failing to cite to Evid. R. 702 orDaubert, which both apply to expert testimony, in his motion in limine.
 {¶ 164} Counsel's decisions not to hire an expert witness to testify about dog tracking evidence and not to request a jury instruction cautioning the jury about dog tracking evidence are both viewed as trial strategy. See State v. Samatar,152 Ohio App.3d 311, 2003-Ohio-1639, at ¶ 90 (citations omitted); Statev. Griffie, 74 Ohio St.3d 332, 333, 1996-Ohio-71 (citations omitted). It is well-established under Ohio law that even a questionable trial strategy does not compel a finding of ineffective assistance of counsel. State v. Smith,87 Ohio St.3d 424, 441, 2000-Ohio-450; State v. Clayton (1980),62 Ohio St. 2d 45, 49. "[R]eviewing courts must not use hindsight to secondguess trial strategy, and must keep in mind that different trial counsel will often defend the same case in different manners." Samatar, 152 Ohio App.3d at ¶ 88.
 {¶ 165} In the case at bar, counsel may have felt that his vigorous cross-examination of Patrolman Merritt was more than sufficient to display the possible weaknesses of the dog-tracking evidence. Accordingly, sound trial strategy dictates that counsel avoid opening the door to further testimony regarding dog tracking, which could have further damaged appellant's case. Moreover, the trial court instructed the jury that they were to determine the credibility of each witness and weigh their testimony accordingly. Again, counsel may have felt that the foregoing instruction was not only sufficient, but also simplistic so as not to confuse the jury. As a result, counsel's assistance was not ineffective in this respect.
 {¶ 166} Appellant also maintains he was provided ineffective assistance of counsel due to his counsel's failure to object to Mr. Robert's tool-mark analysis testimony on the grounds that it did not satisfy Evid. R. 702 and Daubert and to his counsel's failure to hire a firearms identification expert.
 {¶ 167} Since Mr. Robert's testimony was properly admitted pursuant to Evid. R. 702 and Daubert, appellant's counsel did not provide ineffective assistance of counsel for failing to object to this properly admitted testimony. In addition, counsel's decision not to hire a firearm identification expert is a matter of trial strategy and will not support a claim of ineffective assistance of counsel. Samatar, 2003-Ohio-90, at ¶ 90 (citations omitted). Appellent's counsel, therefore, did not render ineffective assistance of counsel by either failing to object to Mr. Robert's testimony or by failing to hire a firearm identification expert.
 {¶ 168} Appellant's eighth assignment of error is without merit.
 {¶ 169} Appellant's ninth assignment of error asserts that the trial court erred by denying his motion for acquittal under Crim. R. 29. Specifically, appellant maintains that the prosecution failed to present sufficient evidence to show that appellant fired the bullet that killed McMillan or to demonstrate that appellant acted in complicity with another party that fired the bullet that killed McMillan.
 {¶ 170} Pursuant to Crim.R. 29, a motion for judgment of acquittal should be granted "if the evidence is insufficient to sustain a conviction." In other words, a trial court "shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus. The same standard of review that is applied to a challenge to the sufficiency of evidence is also applied to a denial of a motion for acquittal. State v. Ready (11th Dist. 2001), 143 Ohio App.3d 748, 759. Thus, a trial court's denial of a motion for acquittal must be sustained if, "after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id., citing Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 171} Appellant was indicted and convicted of aggravated murder under R.C. 2903.01(A). Thus, the prosecution was required to present sufficient evidence demonstrating that appellant purposely, and with prior calculation and design, caused the death of another. Id. Prior calculation and design is not defined in the Revised Code, but is considered to be more than just an instantaneous decision to kill; it encompasses planning "a scheme designed to carry out the calculated decision to cause the death." State v. Jones, 91 Ohio St.3d 335, 348, 2001-Ohio-57
(citation omitted).
 {¶ 172} During trial, the evidence established that McMillan was shot at point blank range in the back of the head. His murder occurred while he was sitting in the driver's seat of his car in the Elk's Lodge parking lot. Eyewitness testimony described a man fleeing from the back seat of McMillan's car immediately following the murder. The foregoing evidence, when viewed in a light favorable to the prosecution, is sufficient to establish that McMillan's death was caused purposefully.
 {¶ 173} Furthermore, the evidence presented at trial placed appellant at the crime scene and at the Monument of Faith Church parking lot. Further evidence demonstrated that appellant was staying at Peterson's home at the time of the homicide. Mr. Robert's testimony confirmed that Peterson's gun was the weapon used in McMillan's death. Clearly, this established that appellant had access to Peterson's gun. Thomas identified appellant as the person who had approached Miller to buy a gun. Additional evidence confirmed that, at one time, Miller had come into possession of Peterson's gun. Art Bell testified that Eggleston and Pough had hatched a murderfor-hire scheme to have McMillan killed. The testimony further established that, after Art Bell informed Pough that McMillan had been killed, Pough instructed him to pay appellant a large sum of money.
 {¶ 174} Viewing the foregoing evidence in a light most favorable to the prosecution, it is evident that the prosecution presented a sufficient amount of evidence so that a rational trier of fact could infer that the appellant committed the offense beyond a reasonable doubt. Thus, the trial court did not err in denying appellant's motion to acquit pursuant to Crim. R. 29(A).
 {¶ 175} Appellant's ninth assignment of error is without merit.
 {¶ 176} Appellant's tenth assignment of error argues that his conviction was not supported by sufficient evidence tending to show that either appellant or someone with whom he acted in complicity with shot McMillan. Specifically, appellant argues that, because there was no direct evidence implicating appellant, his conviction was not supported by sufficient probative evidence.
 {¶ 177} Although there is no direct evidence that confirms appellant participated in the murder-for-hire scheme, there was a substantial amount of circumstantial evidence, as discussed above, demonstrating appellant's involvement in McMillan's murder. "[T]he rule in Ohio is that circumstantial evidence carries the same weight as direct evidence." State v.Collymore, 8th Dist. No. 81594, 2003-Ohio-3328, 2003 Ohio App. LEXIS 3049, at ¶ 34 (citation omitted). The strength of the circumstantial evidence against appellant is more than compelling. Therefore, there was sufficient probative evidence presented to allow the jury to find appellant guilty beyond a reasonable doubt. Appellant's tenth assignment of error lacks merit.
 {¶ 178} Under his eleventh and final assignment of error, appellant contends that the jury's verdict was against the manifest weight of the evidence. Again, appellant argues that the jury convicted appellant of aggravated murder despite a lack of evidence establishing that he either fired the fatal shot or that he acted in complicity with the individual who did so. Appellant concludes that the jury's verdict, when compared to the evidence presented, demonstrates that the jury lost its way and, thus, a new trial is necessary.
 {¶ 179} In reviewing a manifest weight argument, we must conduct an "examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction."State v. Getsy, 84 Ohio St.3d 180, 193, 1998-Ohio-533. "The question is whether there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonably doubt." Id. at 193-194, citing Statev. Eley (1978), 56 Ohio St.2d 169, at syllabus. In other words, we must "determine whether the jury `clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v.Tibbetts, 92 Ohio St.3d 146, 163, 2001-Ohio-132 (citations omitted).
 {¶ 180} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Williams,99 Ohio St.3d 493, 2003-Ohio-4396, at ¶ 86 (citation omitted). An appellate court is to engage in a limited weighing of the evidence introduced at trial in order to resolve whether the state appropriately carried its burden of persuasion. State v.Thompkins, 78 Ohio St.3d 380, 390, 1997-Ohio-52 (Cook, J., concurring). Accordingly, a reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. Statev. DeHaas (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 181} A voluminous amount of testimony and evidence was set forth showing that appellant was involved in the murder-for-hire scheme. Again, as discussed above, while there was no direct evidence of appellant's involvement, the circumstantial evidence presented at trial supports the jury's determination of appellant's guilt beyond a reasonable doubt.
 {¶ 182} Appellant's eleventh assignment of error is without merit.
 {¶ 183} Appellant's eleven assignments of error are without merit. Therefore, appellant's conviction should be affirmed.
[5] State v. Wilbon, 8th Dist. No. 82934, 2004-Ohio-1784,State v. Baker (2000), 137 Ohio App.3d 628, State v. Hartman
(Apr. 5, 1999), 12th Dist. No. CA98-06-040, 1999 Ohio App. LEXIS 1476, State v. Marsh (Sept. 30, 1985), 12th Dist. No. CA84-11-080, 1985 Ohio App. LEXIS 7189, stand for the proposition that when a witness claims a lack of knowledge regarding events described in his or her prior statement, the prior statement is considered inconsistent. Wilbon, 2004-Ohio-1784, at ¶ 33;Baker, 137 Ohio App.3d at 651; Hartman, 1999 Ohio App. LEXIS 1476, at *16-*17; Marsh, 1985 Ohio App. LEXIS 7189, at *12-*13 (citation omitted). As such, the statement would satisfy the affirmative damage requirement of Evid.R. 607(A). State v.Davie (Dec. 27, 1995), 11th Dist. No. 92-T-4693, 1995 Ohio App. LEXIS 6064, at *84 ("Affirmative damage can be shown if the party's own witness' testimony contradicts, denies, or is harmful to that party's trial position.") (emphasis added). Thus, contrary to the majority's contention, these cases are relevant to the issue of whether Art Bell's prior statement was admissible pursuant to Evid.R. 607(A).
[6] In Miller v. Bike Athletic Co., 80 Ohio St.3d 607,1998-Ohio-178, the Supreme Court of Ohio adopted the United States Supreme Court's decision in Daubert v. Merrell DowPharmaceuticals, Inc. (1993), 509 U.S. 579, regarding "the question of when expert scientific testimony is relevant and reliable." Miller, 80 Ohio St.3d at 611.